PAUL SPALDING and LILLIAN INEZ SPALDING, Appellants, v. EDWIN ROBERTSON.—No. 40082.—206 S. W. (2d) 517.

Division One, November 10, 1947.

Rehearing Denied, December 8, 1947.

38

*Ward & Reeves* for appellants.

*Blanton & Blanton, Harry C. Blanton* and *David E. Blanton* for respondent.

[518] DALTON, C.—Action for damages for the death of plaintiffs' minor son who was killed on December 25, 1945, on State Highway No. 84, between Hayti and Caruthersville, when struck by an automobile operated by the defendant. Verdict and judgment were for plaintiffs for $500.00 and plaintiffs have appealed.

Appellants contend that the amount of the verdict is so shockingly inadequate as to induce a conviction that it was the result of either passion, prejudice or partiality on the part of the jury; that Instructions G and H, given to the jury at the request of defendant, are erroneous; and that the court erred in admitting certain evidence offered by defendant.

In accordance with the allegations of the petition, the cause was submitted to the jury on humanitarian negligence in failing to warn, slacken speed or turn the automobile aside after deceased was in imminent peril, and upon primary negligence in operating the automobile "at a high and dangerous rate of speed under the circumstances then and there prevailing" and in not driving as close to the right-hand side of the highway as practicable. The petition further charged that each and all of the acts and omissions of the defendant, as alleged, were done recklessly and in reckless disregard for human life, and so as to constitute aggravating circumstances authorizing plaintiffs to recover additional sums by reason of said aggravating circumstances attending such negligence.

In submitting the cause to the jury the appellants tendered and the court gave an instruction (4-P) that, if the jury found in favor of plaintiffs, and it was further found that defendant's negligence was such as to evince a reckless disregard of the rights of others, "then in assessing plaintiffs' damages, if any, you will award them such sum, not exceeding Ten Thousand ($10,000.00) Dollars, as you believe from the evidence will fairly and reasonably compensate them

for the pecuniary losses, if any, you find from the evidence the plaintiffs have sustained and will sustain as the necessary result of the death of their said son, . . . and you may also take into consideration the mitigating or aggravating circumstances, if any, attending such negligence, if any, on the part of the defendant as hereinbefore mentioned and referred to in said Instructions.''

Instruction G advised the jury that if the verdict was in favor of the plaintiffs to allow them as damages ''only such sum as is a fair and just compensation for the pecuniary injury resulting to plaintiffs from the death of their son''; and that, in determining the plaintiffs' pecuniary injury, they might consider *only* the funeral expenses incurred by plaintiffs incidental to the burial of said son, and the value of said son's services during his minority, less the reasonable cost of support and maintenance. (The funeral expenses, amounting to $513.00, had been paid by appellants).

█ [519] Appellants contend that Instruction G is erroneous, because it withdrew from the jury the right to consider aggravating circumstances in determining the amount of appellants' pecuniary loss, and because it directly conflicted with Instruction 4-P. Respondent says the instruction was proper, because there was no issue concerning aggravating circumstances, nor any evidence tending to show wilful misconduct, wantonness, recklessness or want of care indicative of indifference to consequences. In view of the issues presented, only the evidence most favorable to appellants on the issue of liability and aggravating circumstances will be stated and respondent's evidence will be disregarded, unless it aids appellants' case.

The deceased was a young man eighteen years of age, six feet and one inch in height and weighed 190 pounds. He was a member of the boilermakers union and for two years had been employed as an electric and acetylene welder. He had made as much as $150.00 per week and had contributed liberally to his parents. At the time of his death he was employed in a garage at Caruthersville.

About one o'clock A. M., December 25, 1945, after a Christmas Eve party, a group of young people started from Caruthersville to go to Hayti, six miles west, to get something to eat. They went in two automobiles, one driven by the deceased and hereinafter referred to as the Spalding car and the other driven by Jack Johnson, referred to as the Johnson car. The highway over which they proceeded was paved with concrete 18 feet in width, with an 8 foot shoulder on either side and, at the location hereinafter mentioned, the highway was straight and level. The weather was clear. It was above freezing. The shoulders of the highway were wet, but the pavement was dry.

A short distance west of Caruthersville the Johnson car was sideswiped by another automobile and subsequently parked off the pavement on the north or right-hand side of the highway. The other auto-

mobile involved in the sideswiping, hereinafter referred to as the Wilson car, turned around and parked directly behind the Johnson car on the north shoulder of the highway. The occupants of the Spalding car, which had taken the lead, observed that the Johnson car was not following, and deceased turned his car around and drove back and parked off of the concrete slab, on the north shoulder of the highway, headed east, facing the Johnson car, but at least 12 feet directly west of it.

When the deceased parked his car on the north shoulder of the highway, there was another automobile parked immediately south of it, partly on the south shoulder of the highway and partly on the concrete, parked at an angle, headed somewhat southeast, but with its left rear wheel on the concrete slab, so that the automobile obstructed the south side of the concrete slab about 1½ to 2 feet. The headlights of all four automobiles were burning and the tail light of the Spalding car had been burning, but whether or not it was on after the car was parked, and whether the tail light of the automobile opposite it on the south side of the highway was burning, none of appellants' witnesses could say.

Deceased and others got out and pulled the left front fender of the Johnson car off the wheel and then went to the Wilson car, where the deceased, his brother Paul and a man by the name of Wilson attempted to pull the left rear fender of the Wilson car back in place. The deceased and the two others were standing with their backs toward the highway. They were well lighted by the headlights of the Spalding car, which were headed "at high" directly toward them, and by the headlights of the Wilson car shining against the back of the Johnson car, so that car reflected plenty of light back to them. While the three were standing side by side, partly on and partly off the concrete on the north side of the concrete highway, with Wilson in the center and deceased on his right, the respondent's automobile approached from the west, came over to the north side of the highway, and the spotlight on respondent's automobile and the left side or windshield of respondent's automobile struck deceased about the head and neck and inflicted injuries from which he immediately died. Paul Spalding, who was nearest the approaching automobile, testified that he heard a noise, a skidding sound, looked [520] and saw respondent's automobile skidding northeast about in the middle of the highway, and "almost right on" him. When the automobile had passed, deceased's body was found in the middle of the shoulder on the north side of the highway, 45 feet to the rear of the Wilson car. His neck and jaw were broken and he had a cut over the left eye.

The three persons lifting on the fender of the Wilson car did not occupy more than 1 foot of the concrete slab, and there was nothing between where they were standing and the south edge of the pave-

ment. While the "parked car" opposite the Spalding car "could have made him (respondent) come over part of the way on the other side," there was some three car lengths and two spaces (one of at least 12 feet) of intervening distance between the rear of the automobile parked on the south side of the highway and the rear of the Wilson car parked on the north side of the highway. Respondent's automobile came to a stop about 190 to 195 feet from the point deceased was struck. The rear wheels of respondent's automobile came to rest in the ditch on the south side of the highway and the front wheels were headed north, directly toward the highway. Four skid marks on the highway showed that respondent's automobile had moved sideways. There were skid marks on the road where he came over on the north side and skid marks where he skidded back again into the ditch on the south side of the highway. The spotlight on the left side of respondent's automobile was "torn loose . . . broken back," the windshield was broken next to the spotlight and each of the rear fenders were dented.

As respondent's automobile approached the deceased, the headlights of the automobile were burning, but no signal of any kind was sounded. Before respondent's automobile reached the location of the automobile parked on the south side of the highway, opposite the Spalding car, it was traveling east on the south side of the highway and there was plenty of room (16 feet of concrete) for respondent's automobile to have passed between that automobile and the Spalding car on the north shoulder of the highway. Farther east, between deceased and the south side of the pavement, there was plenty of room (17 feet of concrete) for respondent's automobile to pass to the south of the deceased. Appellants offered no evidence of speed except such as may be inferred from the facts and circumstances attending the death of deceased.

It is somewhat difficult to determine what part of respondent's evidence may be said to aid appellants' case, particularly on the issue of aggravating circumstances. Respondent left Caruthersville about 7 P. M., on the evening of December 24, 1945 to take his brother, Jack, and one Tillman to Kennett. Respondent said "both of them were half boozed up." All went to Kennett and visited the Green Lantern and Mom's Place, dance halls, then drove to "a joint" at Portageville and back to Kennett. Tillman stayed at Kennett and Melvin Pack joined respondent and his brother Jack. Pack and respondent's brother "done a right smart" drinking at Kennett and all left there about a quarter of one, on the morning of December 25, 1945 to return home. Respondent was driving. Pack was teasing Jack, trying to get him "waked up." Pack and Jack were "about half tight when this accident happened." All three were in the front seat. Jack was in the center and Pack on the right side. Leaving Kennett, the road

was a "little sloppy . . . threw slush when meeting cars." Respondent had to keep the windshield wiper on. He met a bus that "splattered the windshield up." He "couldn't see as good as if it hadn't thrown that mud on there." The right-hand side of the windshield was smeared so you could not see through it. Pack said this was due to "stuff on the inside, our breathing against it," and that they did not bother about wiping it off.

Respondent was driving at about 45-50 miles per hour, when some 300 yards away he saw the three cars on the north side of the highway, "at least three cars with headlights." He did not put on his brakes, but did take his foot from the gas pedal, slowed to around 40-45 miles per hour and dimmed his lights. He said, "I run up on the tail light, the first thing I saw I was right on the tail light, on the south side of the road, the car was parked at an angle. . . . [521] Right on him before I saw the reflection of the tail light. . . . The tail light was either dim or out . . . I don't think he had the tail light on, I wouldn't want to swear to it if he did or didn't, it was very dim." There were two automobiles parked on the south side of the highway. Respondent swerved to the left, hit his right rear fender on the car on the south, scooted over to the north side of the highway and saw the people standing on the north edge of the pavement. Deceased was just a few feet away when he saw him standing 1½ to 2 feet from the north edge of the pavement, out by himself. Respondent undertook to swerve to the right, but did not put on his brakes until he hit deceased. When he put on the brakes "the rear end scooted around to the right." At no time did he sound an alarm of any kind. Respondent felt the impact of deceased's body at his side on the left-hand side of the automobile.

Considered in a light most favorable to appellants, the evidence is entirely sufficient to show that the submitted negligence of the respondent was attended by such circumstances as to evince a reckless disregard for the rights of others and a want of care indicative of indifference to consequences. Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S. W. (2d) 115, 121; Cox v. Terminal R. Assn., 331 Mo. 910, 55 S. W. (2d) 685, 686; Treadway v. United Rys. Co., (Mo. Sup.), 282 S. W. 441, 446; Adams v. Thompson, (Mo. App.), 178 S. W. (2d) 779, 785 (14); Williams v. Excavating & Foundation Co., 230 Mo. App. 973, 93 S. W. (2d) 123, 127 (8); Calcaterra v. Iovaldi, 123 Mo. App. 347, 355, 100 S. W. 675; Fischer v Edward Heitzeberg Packing & Provision Co., 77 Mo. App. 108, 116. See, also, McKenzie v. Randolph, (Mo. Sup.), 257 S. W. 126, 127, and cases on sufficiency of evidence to make a submissible case on the issue of culpable negligence in the operation of an automobile. State v. Melton, 326 Mo. 962, 33 S. W. (2d) 894; State v. Studebaker, 334 Mo. 471, 66 S. W. (2d) 877, 882 (5); State v. Campbell, (Mo. Sup.), 84 S. W. (2d)

618, 619; State v. Simler, 350 Mo. 646, 167 S. W. (2d) 376, 383; State v. Sumpter, (Mo. Sup.), 184 S. W. (2d) 1005, 1006; State v. Bolle, (Mo. Sup.), 201 S. W. (2d) 158, 159. Whether or not the negligence submitted was attended by aggravating circumstances was an issue of fact for the jury.

Respondent next contends that the court did not err in giving Instruction G, because appellants did not, when the instruction was proposed, complain of any conflict between Instruction G and Instruction 4-P. Appellants did complain that the instruction excluded "aggravating circumstances, which the jury have a right to consider." The objection was sufficient.

Respondent further contends that appellants were not entitled to submit aggravating circumstances, because "their petition did not separately state the amount claimed as pecuniary and punitive damages." Laws 1943, p. 372, Sec. 52; Otto Kuehne Preserving Co. v. Allen, (C. C. A. 8 Mo.), 148 Fed. 666, 668-671, and cases therein referred to. No such objection was made to the petition, nor to the introduction of evidence of aggravating circumstances. Respondent may not now support the giving of Instruction G on the theory that the pleadings were insufficient to sustain the giving of Instruction 4-P, which authorized only the recovery of pecuniary losses and the consideration of the aggravating or mitigating circumstances. In addition, Sec 52 of the Civil Code, Laws 1943, p. 372, has no application to a proceeding under the wrongful death statutes. See, La Bella v. Southwestern Bell Telephone Co., 224 Mo. App. 708, 24 S. W. (2d) 1072, 1077; Ponticello v. Liliensiek, (Mo. App.), 83 S. W. (2d) 150, 152; Houts, Pleading & Practice, Vol. I, p. 132, Sec. 91.

Respondent next contends that Instructions G and 4-P are not really inconsistent because the latter instruction limited appellants' recovery to pecuniary damages. Instruction 4-P did not tell the jury to add anything to the pecuniary damages if they found the circumstances aggravating, but, after telling the jury that if they found for plaintiffs and found that defendant's negligence was attended with aggravating circumstances, such as to evince a reckless disregard of the rights of [522] others, the instruction followed the statute and advised the jury that, in such case, in determining the amount which would fairly and reasonably compensate plaintiffs for pecuniary loss, they could also "take into consideration the mitigating or aggravating circumstances, if any, attending such negligence, if any, on the part of defendant." Appellants were entitled to the benefit of the statute authorizing consideration of "the mitigating or aggravating circumstances attending such wrongful act, neglect or default." See, Steger v. Meehan, (Mo. Sup.), 63 S. W. (2d) 109, 114; Dalton v. St. Louis Smelting & Refining Co., 188 Mo. App. 529, 174 S. W. 468, 471; Owen v. Brockschmidt, 54 Mo. 285, 289. The instructions were in conflict.

█ Respondent further contends that appellants' instructions on the measure of damages were general and that respondent was entitled to have the jury instructed as to the specific elements for which the appellants were entitled to recover. Respondent, however, was not entitled to an erroneous instruction. Nor can it be said, as contended, that Instruction G was merely silent as to mitigating or aggravating circumstances. It clearly excluded consideration of these matters. For the same reason it cannot be said that Instruction G merely supplements Instruction 4-P. It conflicts with it.

Respondent further contends, that even if Instruction G conflicts with Instruction 4-P, there was no error in giving Instruction G, because Instruction 4-P should not have been given. Respondent's theory is that the evidence shows "mere absence of due care." We have held to the contrary.

█ Respondent further contends that what constitutes aggravating circumstances is a question of law for the court; that Instruction 4-P "did not set out for the information of the jury what allegedly aggravating circumstances it could consider"; and that the Instruction 4-P was clearly erroneous and Instruction G cannot be held to be erroneous because of any conflict with Instruction 4-P. We have held Instruction G erroneous, without regard to Instruction 4-P, because it expressly told the jury that in determining plaintiff's pecuniary injury they could "consider only" the matters therein stated and so excluded the consideration of aggravating circumstances. We need not rule the correctness of Instruction 4-P, however, see Adams v. Thompson, supra, 178 S. W. (2d) 779, 786 (15).

Instruction G, except the first sentence, was apparently taken from the case of Oliver v. Morgan, (Mo. Sup.), 73 S. W. (2d) 993, 997, but that cause was submitted solely upon negligence under the humanitarian doctrine, no aggravating circumstances were pleaded and a verdict was returned for the defendant. Apparently, as the court said, the jury never reached the question of the measure of damages. See, Adams v. Thompson, supra, 178 S. W. (2d) 779, 785. An instruction suitable in one case may be erroneous in another. We hold that the giving of Instruction G constituted reversible error.

█ Two other assignments must be considered. The deceased was single and in good health, "as healthy as any boy." He had sinus trouble and "there was something wrong with his feet," but there was no evidence that these matters caused any inconvenience. He became eighteen years of age on December 7, 1945, and on that date registered with the local draft board under the Selective Service Act. At the date of his death, eighteen year olds, single and in good health, were still being inducted into military service. Deceased would have been sent a questionnaire on January 2, 1946, and, if physically fit and classified 1-A, he would, in the usual course, have been inducted into military service within thirty to sixty days. The witness admitted

that there could be delays and appeals and lots of things could happen. The evidence concerning induction was admitted over the objection that it was not the best evidence; and that it was speculative, since the witness could not say whether the deceased would have been inducted or deferred or found physically fit or not.

The court instructed the jury (Instruction H) that "if your verdict is in favor of the plaintiffs, and you further find from the evidence that the decedent, Robert Spalding, had registered under the Selective Service law and regulations and was [523] subject to induction into the armed forces, then you are further instructed that you may take such circumstance into consideration in considering the pecuniary loss to the plaintiffs, as a result of his death."

Appellants contend that the evidence concerning eighteen year old men, single and in good health, still being inducted was error; that Instruction H permitted the jury to indulge in speculation and to guess as to what could or would happen in the future; and that the instruction singles out a particular fact or circumstance and gives it undue prominence and emphasis, savors of a comment on a single detached fact in the evidence, and is argumentative.

The evidence objected to was competent and admissible and could be considered by the jury in determining the amount of pecuniary loss, if any. Smith v. Ozark Water Mills Co., 215 Mo. App. 129, 238 S. W. 573, 577 (expected marriage, conflicting evidence); Bagley v. St. Louis, 268 Mo. 259, 264, 186 S. W. 966 (age, ability, qualifications to labor, general habits, probable future earnings); Buchholz v. Standard Oil Co., 211 Mo. App. 397, 244 S. W. 973, 978 (child's disposition and likelihood of retaining employment); Kribs v. Jefferson City Light, Heat & Power Co., (Mo. App.), 199 S. W. 261, 263 (defendant's evidence tending to show diminution in value of services of deceased child); Peterson v. Pete-Erickson Co., 186 Minn. 583, 244 N. W. 68 (contemplated separation); Sullivan v. Minneapolis, 167 Wis. 518, 167 N. W. 311, 313 (expressed intent not to marry); 25 C. J. S. 1290, Sec. 122; 16 Am. Jur. (Death), Secs. 213, 214. While the deceased had not yet been classified for the draft, the evidence was sufficient to show prima facie that deceased was single and physically fit and that, in the usual course, would have been classified A-1 and inducted into military service at an early date. The evidence was competent as tending to show the reasonable likelihood of a change in deceased's employment and earnings and a decrease of pecuniary benefits to appellants.

Instruction H singles out the evidence tending to show a particular fact and tells the jury, if they find such fact, they may take it into consideration in considering pecuniary loss. The instruction makes that matter unduly prominent by calling the jury's attention to it. An instruction which singles out a particular fact and gives it undue prominence in discrimination of other facts bearing on

the same issue is erroneous, even though it may state a correct principle of law. Dawes v. Starrett, 336 Mo. 897, 927, 82 S. W. (2d) 43, 58(8); Andrew v. Linebaugh, 260 Mo. 623, 662, 169 S. W. 135; Stetzler v. Metropolitan Street Railway Co., 210 Mo. 704, 712, 109 S. W. 666; Smith v. Sovereign Camp of Woodmen of the World, 179 Mo. 119, 137-138, 77 S. W. ,862; McFadin v. Catron, 120 Mo. 252, 274, 25 S. W. 506; Swink v. Anthony, 96 Mo. App. 420, 426, 70 S. W. 272; Judd v. Wabash, St. Louis & Pac. R. Co., 23 Mo. App. 56, 62; Raymond, Missouri Instructions, Vol. I, p. 87, Sec. 99; 53 Am. Jur., Trial, Sec. 567, p. 448. On the other hand, an instruction directing the jury's attention to the elements which they may consider in estimating damages does not amount to a comment on the evidence, nor give any part thereof undue prominence. See, State ex rel. State Highway Commission v. Haid, 332 Mo. 606, 59 S. W. (2d) 1057, 1060; Knight v. Sadtler Lead & Zinc Co., 91 Mo. App. 574, 581. The fact that the deceased had registered under the Selective Service Act and regulations, and that there was a reasonable probability he would soon have been inducted into the armed forces was only one of many matters mentioned in evidence bearing upon the issue of pecuniary loss to the plaintiffs. The one circumstance could not be singled out and particularly mentioned to the exclusion of others. The court erred in giving the instruction.

In view of our conclusions, supra, it will be unnecessary to rule other assignments. The errors requiring reversal affect only the issue of the amount of damages. Only that issue should be retried. Wilson v. Kansas City Public Service Co., 354 Mo. 1032, 193 S. W. (2d) 5, 9(6), and cases cited.

The judgment is reversed and the cause remanded with directions to retry only the [524] issue of the amount of damages and to enter judgment for the amount as determined. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.