CITY OF TRENTON, Missouri, on the Relation and to the Use of Kenneth
PILCHER, Appellant,

v.

Bert R. MULLINS and New Amsterdam Casualty Company, a Corporation,
Respondents.

No. 47286.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

Herbert S. Brown, Trenton, for appellant.

Russell N. Pickett, Eugene E. Andereck,
Phil Hauck, Pickett, Andereck & Hauck,
Trenton, for respondents.

WESTHUES, Judge.

This is a suit based on an official bond to recover the sum of $5,000 actual and $5,000 punitive damages for an assault. The suit was filed in the name of the City of Trenton, Missouri, on the relation and to the use of Kenneth Pilcher (who is the real party in interest) against Bert R. Mullins and the New Amsterdam Casualty Company, a corporation. Mullins was the city marshal and plaintiff Pilcher was a police officer of Trenton, Missouri. As city marshal, Mullins executed an official bond as required by the city ordinance for the faithful performance of his official duties. The defendant Casualty Company was the surety on this bond. A trial was had to a jury and a verdict was returned for the defendants. Plaintiff appealed.

Two points were briefed: In the first, it is claimed that the trial court erred in giving instruction D. It is claimed that this is a self-defense instruction and that such defense was waived because not specifically pleaded. In the second point briefed, plaintiff says, "The Trial Court erred in allowing numerous improper, *inflamatory* (inflammatory) and prejudicial remarks to be made by Respondents' trial Counsel throughout the trial, and in his argument to the jury, all outside the issues, by referring to various incidents which had occurred a long time prior to the assault on Appellant by Respondent Mullins, such as (1) improper use of the police car; (2) riot gun in the police car; (3) visits by telephone operators to the police station; (4) that the suit was not for damages, but was a trial of the Respondent Mullins for 'misconduct in office'; (5) that if there was a verdict against Respondents, that Respondent Mullins, individually, would have to indemnify the New Amsterdam Casualty Company, the other Respondent; (6) for injecting the matter of self-defense, which was not specifically pleaded as an affirmative defense; (7) that if there was a verdict for as much as one penny against the Respondent Mullins it *fould* (would) be a finding that Respondent Mullins was guilty of misconduct in office and that the suit was an effort through the Court to remove Respondent Mullins from office; (8) referring to Appellant's counsel as 'wanting to put Respondent Mullins to the expense of two law suits.' It is obvious that such conduct by Respondents Counsel affected the trial of the case on the merits."

Before considering the points briefed, we shall relate what the evidence showed to have occurred. On December 18, 1957, the defendant Mullins was the city marshal of Trenton, Missouri. There were six police officers on his force including plaintiff Pilcher, A. J. Hickman, and a Mr. Hobbs. Pilcher's duty was from midnight to 8:00 a. m. Hobbs had requested a vacation during the Christmas season. Mullins had agreed and had arranged to have a man not on the police force substitute for Hobbs during his vacation. On or about December 17, Mullins learned that the man who was to take Hobbs' place was ill and could not do police duty. Mullins, who usually began his work at 8:00 a. m., notified Pilcher to wait for him on December 18. Pilcher did so and when Mullins appeared at the police station, he notified Pilcher that his hours of duty would be changed and he would be on duty from 4:00 p. m., to midnight. To this Pilcher replied that he could not comply with the order because he was working at another job and the hours would conflict. Mullins informed him that due to unavoidable circumstances, Pilcher would have to change his hours as requested. Pilcher refused and after some argument between the two, Pilcher told Mullins he was going to quit; he took off his badge and placed it on a desk in the office. Mullins then told Pilcher to get out and go home. After some further argument, Mullins struck Pilcher with a revolver. About this time, officer Hickman, who was also at the station at this time, stepped in and, as he testified, he told the two that that was enough and to quit. Mullins informed Hickman to stay out of the discussion; that it was none of his business. About that time, Mullins struck

Hickman. Later, Hickman turned in his badge and resigned as a police officer. Mullins testified that Pilcher and Hickman were armed with blackjacks and loaded revolvers; that Pilcher persisted in arguing and when Mullins stepped out of the radio room, he again told Pilcher to go home and Pilcher replied, " 'You can't make me.' "; that Pilcher threw a bunch of keys at him and when he again advised Pilcher if he did not go home, he would lock him up, Pilcher replied, " 'You will play hell, you ain't big enough.' " Mullins stated that he reached out toward Pilcher "and he just knocked my hand down * * and he (Pilcher) struck twice; he hit one arm and knocked it down"; and that then he, Mullins, hit Pilcher on the side of the head with his revolver.

Pilcher testified that he went to the radio room to get his coat not to follow Mullins; that Mullins became angry because he, Pilcher, resigned; that he did not prolong the argument; and that Mullins struck him without cause.

Plaintiff called a witness who had heard some of the argument. This witness testified that he heard Mullins tell Pilcher several times to go home or he would lock him up. To show that Mullins was angry and talking loud, the witness was asked,

"* * * this shouting that you heard Mr. Mullins doing, could you understand it; could you understand what the words were? A. Yes.

*     *     *     *     *     *

"Q. Did you hear him say that he was going—that he was going to put him back there? A. I heard him say he could put him back there.

"Q. Now, Mr. Mullins voice was louder than mine and was shouting, is that true? A. I don't know whether it was much louder or not. It might be a little."

Plaintiff Pilcher was asked on cross-examination if he became angry and he gave the following testimony:

"Q. * * * And when you made these statements, you didn't argue with him, you weren't mad, you didn't shout, is that right? A. I was teed off.

"Q. Sure, you were teed off? A. Like anyone would be."

Evidence was introduced which tended to show that ill feeling existed between the defendant Mullins and the three police officers above named. This feeling dated back to the previous city election when defendant Mullins and Mr. Hobbs, both police officers, were candidates for the office of marshal. Pilcher and Hickman, also police officers, supported Hobbs in that campaign. A number of incidents which did not promote good feeling had occurred while these men were fellow officers prior to Mullins' election as marshal. After Mullins was elected, Pilcher, Hickman, and Hobbs all asked to be placed on the police force. Mullins testified that, before appointing them, he told them that they would have to mend their ways and conform to his policy as to the manner of running the department. There was evidence that the three men mentioned harbored a dislike for Mullins and they did not overlook an opportunity to cause Mullins some embarrassment. Hickman testified on cross-examination that sometime prior thereto the matter of getting even was discussed and it was decided "if anything was going to be done, was go through the court of law. * * * If a fellow has something that he deems strong enough to get him even with a man for something, I think court is what it's for." Pilcher denied that any such discussion occurred but, on cross-examination, he stated, "I might have gave it a thought once in awhile."

Plaintiff introduced an ordinance of the City of Trenton pertaining to the police department. Section 35 of this ordinance provided that any police officer who "shall willfully abuse or maltreat a prisoner or other person, shall upon conviction thereof, * * * be discharged from service." By Section 36 of the ordinance, it is provided

that every member of the police department "shall devote his whole time" to the business of the department and "expressly prohibited (such member) from following any other calling" or being employed in any other business. Section 40 thereof provided in part that "Any marshal, assistant marshal, or policeman, who has been * * * guilty of any brutal or indecent act, * * * shall be deemed guilty of misconduct in office."

Plaintiff, in his petition, alleged that Mullins was city marshal and as such was guilty of a brutal act which plaintiff alleged was a violation of the city ordinance and that Mullins was guilty of misconduct in office. The defendants denied all of these charges.

The parties do not contend that the evidence was not sufficient to sustain a verdict for either Pilcher or the defendants.

Instruction No. D, which plaintiff contends to be a self-defense instruction, reads as follows:

"The Court instructs the jury that Plaintiff, Pilcher, charges Defendant, Mullins, with being guilty of a brutal act because he claims Defendant, Mullins unlawfully struck him on the head with a revolver in the Trenton Police Station on December 18, 1957.

"In that regard, the jury is instructed that Defendant, Mullins at the time and place mentioned in evidence, was the City Marshal of the City of Trenton, Missouri, and was acting in his official capacity as such; that in his capacity as City Marshal, the Defendant, Mullins, was by City ordinance:

"(a) In full charge and responsible for the Police Department of the City of Trenton, Missouri;

"(b) Responsible for the discipline of Police officers serving under him;

"(c) Required to be at all times on the alert to suppress any riot or disorder in the City;

"(d) Authorized to make arrests;

"(e) Held strictly responsible for the preservation of the public peace and protection of life and property.

"The jury is further instructed that if you find and believe from the evidence that Plaintiff, Pilcher, was warned to leave the Police Station, threw keys at Defendant, and made threatening gestures, and quarreled with Defendant, and thereby created a disorder and disrupted the public peace, then you are further instructed that it was lawful for Defendant to take such steps as were reasonably necessary to suppress such quarreling, if any, and disorder, if any, and to preserve the public peace.

"In that regard, you are further instructed that in determining whether or not striking the said Pilcher with a revolver was a reasonably necessary action on the part of Defendant, you may take into consideration the fact that the said Pilcher was armed with a blackjack and a loaded revolver.

"And if you find that Defendant, Mullins, in striking the said Pilcher, acted as a reasonably prudent person holding a like office, with like duties, would act under the same circumstances, then your verdict shall be for the Defendants and against the Plaintiff, Pilcher.

"The Police Station mentioned in evidence was a public place; and the term 'preservation of the public peace,' as used in these instructions, means to keep quiet, to keep order, to keep freedom from disturbance in a public place."

█ It is our view that the instruction is not based on self-defense. By it the court submitted to the jury the question of whether Mullins was in the circumstances justified as an officer of the law to use the force he did to preserve the public peace.

The instruction does not mention any justification on the theory of self-defense and was not a self-defense instruction. The point is without merit. Secs. 509.050 and 509.090 RSMo 1949, V.A.M.S., and cases cited by plaintiff are not applicable to the point presented. Plaintiff cited the case of Spalding v. Robertson, 357 Mo. 37, 206 S. W.2d 517. No question of law considered in that case has any application to the point now before us.

■ In the second point briefed, plaintiff says the trial court erred in allowing numerous improper remarks to be made by defendants' counsel. The points, eight in number, are set forth above in this opinion. We have examined all of these and find that the record does not support plaintiff's contention. Defendants did attempt to introduce evidence, including the application made by Mullins for a bond, that in case of a judgment on the bond, Mullins would be primarily responsible to satisfy the judgment. The trial court rejected each and every offer made and advised the jury to disregard any remarks made when such evidence was offered. Such evidence was properly rejected. See City of Advance ex rel. Henley v. Maryland Casualty Company, Mo., 302 S.W.2d 28, loc. cit. 34(7), where this court said, "The rights and liabilities existing between the parties defendant herein were of no concern whatever to the jury and legally could not be stressed in argument *by either of the parties in an effort to obtain a favorable verdict or award of damages.*" (Emphasis supplied.) During the closing argument, defendants' counsel attempted to argue this point and was immediately stopped on objection by plaintiff.

■ Plaintiff's counsel, in his argument, emphasized the fact that the Casualty Company had executed the bond and ought to be required to pay. We quote a portion of his argument: "Gentlemen of the jury. I didn't think Mr. Andereck would want to discuss the damages with you. He wanted

you to forget that the New Amsterdam Casualty Company wrote this bond to protect you, I, Kenneth Pilcher, anybody in this courtroom, from a brutal act. From being hit on the head with a revolver and having done to you what Bert Mullins did to Kenneth Pilcher. Judge Rose told you that the money payable in this lawsuit, if you find for the Plaintiff, does not go to the City of Trenton. It goes to Kenneth Pilcher, because he wants it. He was hurt. He was hurt terribly. Of course, he is entitled to money. And he wants the New Amsterdam Casualty Company, who voluntarily wrote this bond for Bert Mullins and guaranteed that if he did do any such act, as has been related to you, that they would pay any sum that the jury should assess." It is evident that plaintiff's counsel wanted to impress upon the jury that the bonding company was to pay any judgment given plaintiff. This, too, was improper.

■■ We shall briefly refer to a number of other complaints under point two. The record showed that Mullins had rebuked Pilcher and other police officers about the improper use of police cars, such as using them outside the city limits and rough handling of the cars causing damage. It was in evidence that Pilcher had taken a riot gun from the police station and placed it in a police car to be used in shooting at tires of speeding cars. Mullins, on learning of this, immediately removed the riot gun and rebuked Pilcher for his action. There was evidence, some of which has already been mentioned, that Pilcher, Hickman, and Hobbs had in mind causing the defendant Mullins to be placed in jeopardy and were looking for an opportunity to do so. Hickman also had a case pending at the time of this trial against Mullins. We call attention to the fact that Pilcher, in having other employment when he was a police officer, was violating the city ordinance. His first duty was to the city and when Mullins asked him to change his shift, it was Pilcher's duty to comply with the order. All these matters were before the jury and

we may add that the evidence of the disputes between the parties shed light on the question of whether Pilcher was deliberately creating a disturbance for the purpose of bringing about a situation which would cause embarrassment to Mullins.

The trial of this case was hotly contested. We add that the trial judge umpired the case well.

Finding the points briefed without merit, we hereby affirm the judgment.

All concur.