Frank O. BITTNER, Jr., (Plaintiff) Respondent,

v.

CROWN SHOE MANUFACTURING COMPANY, a corporation, (Defendant) Appellant.

No. 30341.

St. Louis Court of Appeals.

Missouri.

Nov. 15, 1960.

Karol A. Korngold, St. Louis, for appellant.

Ludwig Mayer, Clayton, for respondent.

RUDDY, Judge.

This is an action for recovery of commissions for services rendered by plaintiff (respondent) as a shoe salesman for defendant (appellant). Plaintiff recovered a judgment against defendant on Count I in the principal sum of $2,340.60 plus interest in the sum of $468.12 and on Count II in the principal sum of $50 plus interest in the sum of $10. Defendant appeals from the judgment.

Plaintiff's original petition contained three counts. Before trial he dismissed Count III.

It is alleged by plaintiff in Count I of his petition that on or immediately prior to November 14, 1953, he was employed by defendant under an oral contract of employment to sell a line of shoes known as "College Deb" in the states of Arkansas, Louisiana, Oklahoma, Texas, and Mississippi, with the exception of certain specified accounts and that plaintiff was to receive as compensation 5% commission on net sales made in said territory.

The petition further alleged that on November 14, 1953, plaintiff accepted said employment by letter. A copy of said letter was attached to the petition and by reference was incorporated in and made a part of the petition. Said letter is as follows:

"Nov. 14th, 1953.
"Crown Shoe Co.,
"1204 Washington Ave.,
"St. Louis, Mo.

"Attention: Mr. Bennett Frelich

"Dear Bennett:

"At the time Mr. A. Tober agreed to have me carry the College Deb line it was understood that my territory should be the same as the Cangemi line, Ar., La., Okla., Texas, and Miss., with the exception of the following accounts:
Given Bros., El Paso, Texas
Graham Brown, Dallas, Texas
Lewis Stores, Waco, Texas
United Shoe Stores, Shreveport, La.
Berkley Shoe Store, Longview, Texas.
"At the Dallas Show you added these to the list:
Ben Daniels, Fort Worth, Texas and Kornblum, Houston, Texas.
"Also, at the Dallas Show you gave me prices at which I can sell accounts with a pairage of over one thousand pairs with a minimum of seventy two pairs to a shoe with a three per cent commission.
"If at any time I should not be able to sell an account at either of the above prices that will buy volume I shall contact you before turning down the account so that it can be worked out if possible.
"Sincerely,
"F. O. Bittner, Jr."

Plaintiff further alleged that he sold said "College Deb" line in the territory mentioned and earned commissions on shoes sold by him in the period beginning in December 1953 and ending in March 1955, in the total sum of $2,340.60, and that defendant has failed and refused to pay said sum.

In Count II of said petition plaintiff realleged some of the averments contained in Count I and further alleged that it was understood and agreed between plaintiff and defendant that plaintiff was to have the exclusive right to sell the aforementioned College Deb line of shoes within the territory named, with the exception of the specified accounts referred to, but that contrary to said understanding the defendant, by and through its employees and officers, sold the said "College Deb" line to certain accounts within said territory other than the excepted specified accounts and failed to credit plaintiff with his commission earned, which he alleged was in excess of $7,800.

Defendant in its answer to Count I of plaintiff's petition admitted that plaintiff was engaged to sell the "College Deb" line of shoes in the aforesaid territory, and admitted that the commissions earned amounted to $2,340.60 and alleged that the commissions were paid in full in the following manner, pursuant to an agreement defendant had with plaintiff. In pleading this agreement defendant alleged that:

"Plaintiff had been employed by Selwyn Shoe Manufacturing Corporation, a corporation, to sell shoes in the territory alleged in paragraph 2; that said Selwyn Shoe Manufacturing Corporation is a subsidiary of a corporation known as Tober-Saifer Shoe Manufacturing Company; that the defendant is also a subsidiary of said Tober-Saifer Shoe Manufacturing Company, and that in order to assist the plaintiff to earn the drawing account which the said Selwyn Shoe Manufacturing Corporation was paying to plaintiff, the said Selwyn Shoe Manufacturing Corporation arranged for the plaintiff to sell a line of shoes known as 'College Deb' which was manufactured by the defendant, and that it was understood and agreed that all commissions to be paid by said defendant, Crown Shoe

Manufacturing Company, to plaintiff, were to be paid by this defendant to Selwyn Shoe Manufacturing Corporation, who would in turn give credit for same to the plaintiff, and that from and after November 14, 1953, said arrangement was carried out by both plaintiff and defendant."

In its answer to Count II defendant denied that plaintiff had the exclusive right to sell the "College Deb" line of shoes within the territory described in plaintiff's petition.

It was further denied by defendant, in its answer to Count II of plaintiff's petition, that its employees and officers sold the "College Deb" line to any accounts within the territory described, other than the excluded specified accounts.

The initial contention asserted by defendant is that the trial court erred in admitting parol evidence to prove certain terms of the employment contract, which evidence it contends was at variance with the terms of the written contract. It is the position of defendant that the letter written by plaintiff on November 14, 1953, addressed to the defendant for the attention of Mr. Bennett Frelich, resulted in a written contract of employment. It further asserts that in place of an oral contract of employment that existed before the letter was written, because of the writing of the letter, "a written contract sprang into being."

Before discussing this initial contention of defendant, it will be helpful to a better understanding of this and other contentions made by defendant if the background history and events that occurred prior to and at the time of defendant's employment by Crown Shoe Manufacturing Company are recited at this point.

Defendant Crown Shoe Manufacturing Company (hereinafter referred to as Crown) and the Selwyn Shoe Manufacturing Company (hereinafter referred to as Selwyn) are separate corporations and both are subsidiaries of Tober-Saifer Shoe Manufacturing Company (hereinafter re-

ferred to as Tober-Saifer). Bennett Frelich was a salesman and plant manager of Crown at the time of plaintiff's employment and Lester Tober, son of Abraham Tober, was employed by both Tober-Saifer and Selwyn. Abraham Tober was Chairman of the Board of Tober-Saifer and all of its subsidiaries. Plaintiff's first employment was with Selwyn where he was engaged in selling a line of shoes known as "Cangemi Coeds." His territory consisted of Arkansas, Louisiana, Oklahoma, Texas and Mississippi and in his testimony plaintiff said he was to receive a salesman's commission of 5% on all sales made in the five states. The employment agreement with Selwyn to sell the Cangemi Coeds also provided that plaintiff was to receive an advance or drawing account against commissions of $200 per week while traveling. In other words, plaintiff was to pay out of his commissions all traveling and other expenses incurred by him in the five-state territory. Plaintiff's employment with Selwyn began in April 1953.

Plaintiff's evidence shows that about the early part of November 1953, or a very short time prior thereto, plaintiff discussed with Lester Tober the cost of introducing the Cangemi Coed line of shoes to the potential buyers in the territory assigned to him, pointing out to Lester Tober that it was "costing him (plaintiff) money" and that his expenses exceeded the $200 per week advance. Plaintiff told Lester Tober that he should be allowed to carry another line of shoes and said that "it was my suggestion that I be given the College Deb line, because I felt that stores that I called on in my territory, this line of shoes would fit into one of their departments and I could do a fairly good job with them." The College Deb line of shoes was manufactured by Crown. Lester Tober told plaintiff that he would talk to Bennett Frelich about plaintiff's suggestion and thereafter plaintiff talked to Bennett Frelich and as a result of his discussion with him, it was agreed that plaintiff was to carry the College Deb line of shoes in the same

territory assigned to him in connection with his handling of the Cangemi Coed line. Plaintiff said he was to have the entire five-state territory, except for five accounts which were designated by Bennett Frelich. In connection with the conversation plaintiff had with Bennett Frelich that resulted in plaintiff's employment by Crown to carry the College Deb line of shoes, plaintiff said that he "was to receive a five per cent commission from all shoes sold in that territory, * * * except for five accounts" with a separate understanding about special deals wherein he was to receive a commission of three per cent. At the time these discussions took place with Lester Tober and Bennett Frelich plaintiff testified that he knew his commission account was overdrawn, but stated that there was no discussion with Mr. Lester Tober about the amount of his overdraft.

Plaintiff further testified that he discussed the matter of carrying the College Deb line of shoes in his territory with Abraham Tober and that Abraham Tober agreed to the employment of plaintiff by Crown to represent it in the territory assigned to plaintiff for the Cangemi Coed line of shoes in the sale of College Deb line of shoes, however, adding that the matter of commissions or compensation for handling the College Deb line of shoes was not discussed with Abraham Tober.

Plaintiff was asked in his direct examination the following question: "Was there any discussion with Mr. Frelich or with Mr. Tober or with any other officer of the company regarding the payment of your commissions earned by the Crown Shoe Corporation to any one other than yourself?" and he answered, "No, sir." Plaintiff denied there was any agreement to pay Selwyn the commissions due him from Crown. After relating the aforesaid discussions plaintiff offered, and the court admitted in evidence, the letter dated November 14, 1953, which plaintiff said he mailed to Bennett Frelich and he further testified that "It explained in substance our conver-

sation * * *," but he denied that it constituted the entire agreement.

Defendant's witnesses admitted that plaintiff was employed by Crown to sell the College Deb line of shoes in the five-state territory, with the exception of certain designated accounts.

While there were many conflicts between the testimony of plaintiff's and defendant's witnesses, for the most part, they concerned immaterial and irrelevant matters. Two material matters testified to by the witnesses of the parties wherein there was sharp conflict concerned the agreed manner of payment of the commissions earned by plaintiff in the sale of College Deb shoes and whether or not it was agreed that plaintiff had the exclusive right to sell the College Deb line of shoes in the territory assigned. As shown heretofore, plaintiff testified there was no agreement to pay the commissions due him from Crown for the sale of College Deb shoes to Selwyn for the purpose of reducing any overdraft he may have had in his Selwyn commission account, whereas, defendant's evidence was to the effect that he was given the College Deb line of shoes to sell in order to help plaintiff reduce the overdraft he had in his commission account with Selwyn, and that plaintiff agreed that Crown would pay the commissions due him from the sale of College Deb shoes to Selwyn, where the payment would be placed to the credit of plaintiff in his commission account.

In connection with the conflict in evidence as to whether or not it was agreed that plaintiff had the exclusive right to sell College Deb shoes in the territory assigned, plaintiff's evidence showed that it was so agreed, whereas, defendant's evidence showed that he was to be paid commissions only on shoes actually sold by plaintiff in the territory assigned him.

Defendant in its first contention argues that the letter of November 14, 1953, written by plaintiff embodies the contract of employment. It is well established that

where parties put their entire agreement in writing, then in the absence of fraud, accident, or mistake, the law presumes that the writing contains the agreement made between them and parol evidence that tends to vary or contradict the terms of the writing is inadmissible. Mitchell v. Philippi, 359 Mo. 754, 223 S.W.2d 441.

However, where the writing does not contain all of the obligations assumed by the parties, parol evidence of a collateral agreement is admissible if it does not interfere with the terms of the writing and does not add to the obligations of the written contract. Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 26 A.L.R.2d 278; Mitchell v. Philippi, supra.

The letter of November 14, 1953, in the case before us, shows on its face that it does not contain all of the obligations assumed by the parties. It sets forth that plaintiff was to carry the College Deb line without further identifying this line of shoes; that the territory was to be the same as plaintiff had in selling the Cangemi Coed line of shoes, and identifies the territory and excepts certain specified accounts. It includes a special commission agreement on what appears to refer to sales to large or special accounts at special prices. There is not a word in the letter providing for the commission plaintiff was to receive on other sales. This omission is acknowledged by defendant in its brief. However, it offers no problem because it is admitted by both parties that the commission on those sales was 5%. Defendant does not seem to object to the parol evidence admitted as to the commissions to be received by plaintiff on those sales. Its complaint, under the contention being reviewed, is that the court admitted parol evidence which showed plaintiff was to have the five-state territory exclusively with the exception of the named accounts, and parol evidence which showed plaintiff's understanding of what was meant by and included in the College Deb line of shoes.

It argues that this parol evidence was at variance with the letter of November 14, 1953. The parol evidence alleged to have been erroneously admitted by the court has application only to Count II of plaintiff's cause of action wherein he seeks recovery for sales of College Deb shoes made in the five state territory by employees and officers of defendant to accounts other than the excepted accounts. This evidence has no application to the recovery sought under Count I.

It is admitted by defendant that plaintiff earned commissions from sales directly made by plaintiff during his employment with Crown in the total sum of $2,340.60. Defendant further admitted that this sum had been paid by it to Selwyn and applied to plaintiff's overdraft in his commission account with that company.

■ Defendant seems to have adopted a rather anomalous position. As we have shown, it charges error by the trial court in the admission of certain parol testimony, yet it introduced evidence of an alleged parol agreement with plaintiff to have all commissions earned by him while in the employment of Crown paid to Selwyn and there to be credited to plaintiff's commission account. There is nothing in the letter to that effect. Plaintiff denied that there was such agreement. Whether or not there was such an agreement, was a jury question and was properly presented to the jury and it found in plaintiff's favor on that issue. The parol evidence defendant complains of has no bearing on or application to the recovery sought by plaintiff under Count I of his petition.

Whether or not the court erred in admitting the parol evidence complained of by defendant, insofar as Count II is concerned, need not be resolved by us, because we think another contention urged by defendant directed at the verdict brought in by the jury under Count II of plaintiff's petition should be sustained. This contention made by defendant asserts that the court erred in re-

fusing to sustain defendant's motion to dismiss Count II of plaintiff's petition and to direct a verdict for defendant, made at the close of plaintiff's case because there was no substantial, competent or credible evidence to support any verdict for plaintiff on said count.

Defendant asserts that there was insufficient evidence to enable the jury to determine the amount of commissions, if any, due plaintiff under the allegations of Count II of plaintiff's petition. Plaintiff's testimony as to the sales of College Deb shoes and amount of such sales in plaintiff's territory made by persons other than plaintiff and to accounts other than those excepted was confusing and contradictory. The record in this case is voluminous and more than one-half of the record is devoted to examination, cross-examination and colloquy between the court and attorneys on this issue. Much of it consists of repetitious examination on this one question. We have carefully read the record and think it can be fairly summarized as follows: plaintiff testified that in his calls on the stores in his territory he found some had been receiving "College Deb shoes but under another name." When asked by the court "How do they compare with College Debs?" he answered "They were made at the same factory except in the sock lining instead of College Deb they had in there different names that the stores requested."

At another point in his testimony, when he was asked what he meant by his reference to the College Deb shoes he found in these stores, he said "All shoes that are manufactured by the Crown Shoe Company."

In other places in his testimony, when he was pressed as to whether or not the shoes he said he saw in these stores were College Deb shoes, he merely answered the question by saying "They were manufactured by Crown Shoe Company."

Several times plaintiff was asked if he knew how many lines of shoes Crown man-ufactured and he would answer "I don't really know." However, in other places when plaintiff was pressed by defendant's counsel and the court as to whether Crown manufactured other lines of shoes, after considerable evasion, he finally answered "They made shoes outside of College Debs, yes, sir." In other parts of plaintiff's testimony he conceded that other lines of shoes were made by Crown.

In a consideration of the above stated testimony and of the entire record in this case, it is obvious to us that plaintiff confused the College Deb shoes with other lines of shoes that were manufactured by Crown. He never did identify with certainty that the shoes he saw in the stores were College Debs. We interpret his testimony to mean that he saw in these stores shoes which were not sold by him but were manufactured by Crown and from this he concluded that they were College Deb shoes. This conclusion, of course, is not valid, inasmuch as plaintiff in some parts of his testimony admitted that other lines of shoes were manufactured by Crown and under the terms of his employment agreement were permitted to be sold by Crown in the territory assigned to him for the College Deb line. It is clear from a reading of plaintiff's own testimony and the testimony of defendant's witnesses that Crown manufactured several lines of shoes.

In another connection plaintiff attempted to infer that College Deb shoes were sold to the Paul Shoe Company, Dallas, Texas, and that he was never credited with any College Deb sales made to that company. However, in connection with the alleged sale of those shoes when he was asked "Now were they College Debs?" he answered "I don't recall." He was further asked, "But you don't know whether they were College Debs?" and he answered "They were manufactured by Crown Shoe Company." Here again, it is obvious that plaintiff was attempting to leave the impression that Paul Shoe Company had bought College Deb shoes. However, it is clear from our ex-

amination of his testimony that he did not know. All that he knew was that the shoes he saw at Paul Shoe Company were manufactured by Crown, and, as we pointed out heretofore, Crown manufactured several lines of shoes and had the right to sell to Paul Shoe Company, through other agents, the lines manufactured by it other than the College Deb. We do not believe that this testimony of plaintiff supports the charge that the Paul Shoe Company were sold College Deb shoes. Plaintiff clearly stated that he did not know, having said that he could not recall. All that he did know was that the shoes were manufactured by Crown.

In a further effort to support Count II plaintiff testified that Bennett Frelich told him (after plaintiff had terminated his employment with Crown, and after plaintiff told Frelich that his sales in the territory totaled $46,000 in shoes) "that didn't amount to anything, he (Frelich) had sold three times as many shoes in my territory as I did." Plaintiff attempts to convert this statement into an admission that Bennett Frelich sold three times as many College Deb shoes in the five-state territory as plaintiff did. Again, when plaintiff was asked "How do you know it was College Deb line of shoes?" he answered "Because they were made at the factory at Palmyra." We do not consider this statement of Bennett Frelich as constituting substantial evidence to show that Frelich had sold three times as many College Deb shoes in the five-state territory assigned to plaintiff to accounts other than those excepted. Nor is it clear that the remark made by Bennett Frelich did not refer to sales made to the excepted accounts. As a matter of fact there isn't any evidence to show to what accounts these sales were made. Obviously, if Bennett Frelich had sold College Deb shoes to the excepted accounts, plaintiff would not be entitled to commissions for sales to those accounts. Another weakness appears in plaintiff's reliance on this statement by Bennett Frelich and it is that this conversation took place sometime after plaintiff's employment was terminated and the testimony of plaintiff does not indicate when the alleged sales of these shoes by Frelich were made in the territory assigned to plaintiff.

■ We view plaintiff's evidence, given in support of Count II, as insufficient to support a submission of said count to the jury. We think the amount of the verdict under Count II indicates that confusion reigned in the minds of the jury. We rule that plaintiff failed to produce sufficient and substantial evidence to show that sales of College Deb shoes were made in the five-state territory to accounts, other than those excepted, by persons other than plaintiff. Further, if we could find that such sales were made, plaintiff failed to show the monetary amount of said sales.

■ In another point defendant urges that the trial court abused its discretion in permitting plaintiff to amend his petition at the close of plaintiff's evidence. Plaintiff alleged in Count I of his petition that he "was employed by the defendant under an oral contract of employment to sell for the defendant a certain line of shoes known as the 'College Deb' line * * *; and that the plaintiff was to receive as compensation an amount equal to five per cent (5%) of the net amount of sales made *by plaintiff* in said territory." (Italics ours.) At the conclusion of plaintiff's evidence he was permitted to amend his petition by deleting the words "by plaintiff." Defendant complains that the amendment changed plaintiff's cause of action from one, wherein plaintiff alleged that he was entitled to commissions on sales made by him in the territory assigned, to one, wherein he now claims commissions on all sales made in the territory. Defendant contends it was prejudiced by this amendment in that it was not prepared to meet the new issue presented. This contention is without merit. The fact is no new issue was presented. It was alleged in Count II of plaintiff's petition "that plaintiff was to have the exclusive right to sell the aforementioned 'College

Deb' line within the aforementioned territory" and asked recovery of commissions on all sales made by others in said territory. Defendant having been advised, under Count II of plaintiff's petition, that he was seeking commissions on all sales made in the assigned territory, regardless of who made the sales, we fail to see how the amendment changed the over-all character of plaintiff's cause of action.

Defendant complains that Instruction No. 1 offered by plaintiff and given by the court omits an essential element necessary to a recovery by plaintiff which was not cured by a proper instruction given for defendant which included the alleged omission.

Instruction No. 1 reads as follows:

"The Court instructs the jury that upon Count I of Plaintiff's Petition your verdict should be in favor of the plaintiff for the amount of the commissions earned by him on his net sales of $46,291.20, said commissions being in the sum of $2,340.60, plus interest thereon at the rate of 6% per annum from the time that suit was filed on August 9, 1955; unless you find and believe from the evidence that the plaintiff agreed that all commissions earned by him upon the sale of 'College Deb' line of shoes for the defendant, Crown Shoe Manufacturing Company, were to be paid by said defendant to the Selwyn Shoe Manufacturing Company."

The pertinent part of Instruction No. 5, offered by defendant and given by the court reads as follows:

" * * * and if you further find and believe from the evidence that it was agreed and understood by and between plaintiff Bittner and defendant Crown Company that the said Crown Company should pay the commissions so earned by plaintiff from the sale of said shoes to the Selwyn Company, to be credited to the account of plaintiff on the books of said Selwyn Company, and if you

further find and believe from the evidence that from the date the plaintiff sold said 'College Deb' line of shoes until the time he ceased selling said line of shoes, all commissions so earned by plaintiff on the sales made were so paid to the Selwyn Company pursuant to the aforementioned agreement, and with the consent of the plaintiff, if you so find there was such an agreement and consent, and if you further find and believe from the evidence that the total commissions earned by plaintiff because of sales of the certain shoes known as 'College Debs' were so paid by defendant to Selwyn Company, if you so find, then the Court instructs you that your verdict will be in favor of the defendant and against the plaintiff on Count I set forth in plaintiff's petition."

Defendant contends that these two instructions are conflicting because defendant's instruction requires the jury to find that the commissions were to be paid by defendant to Selwyn "for credit to the account of plaintiff," whereas, plaintiff's instruction fails to require a finding that the commissions paid to Selwyn were to be credited to plaintiff's account. Defendant asserted the defense to plaintiff's claim that there was an agreement to pay whatever commissions plaintiff earned in his employment with Crown to Selwyn, rather than to plaintiff. The real issue presented by this defense was to whom were the commissions to be paid. If the commissions were to be paid to Selwyn, they were to be credited to plaintiff's commission account. There was no dispute as to that. The sole controversy was whether or not there was an agreement to pay the commissions to Selwyn. If there was such an agreement, then they were paid Selwyn for the benefit of plaintiff. As we said, there was no controversy as to the application of the payments if they were to be paid Selwyn. On the other hand, if they were not to be paid to Selwyn, then plaintiff was entitled to recovery.

We see no conflict between the two instructions. The test is, would the two instructions when read together mislead the jury. We do not think the jury was misled. The point is ruled against defendant.

The trial court refused to give Instruction C offered by defendant and defendant contends the refusal was erroneous. Instruction C reads as follows:

"The Court instructs you further that if the defendant paid the commissions herein involved to the Selwyn Shoe Company, for credit to plaintiff's account, pursuant to an understanding between A. E. M. Tober and the plaintiff, as set out in other instructions, then such payment so made to the Selwyn Company constitutes payment to the plaintiff. In determining whether there was such an agreement or understanding, you may take into consideration the conduct of the parties, the length of time involved, the fact that at no time during the entire period of employment did the plaintiff receive a check or payment of commissions from the defendant, and all such other matters in evidence pertaining thereto."

■ This instruction singles out for special attention of the jury portions of the evidence, viz., "the length of time involved, the fact that at no time during the entire period of employment did the plaintiff receive a check or payment of commissions from the defendant, and all such other matters in evidence pertaining thereto." It gives undue prominence to this portion of the entire evidence. An instruction that gives such prominence to certain facts in the case in discrimination of other facts bearing on the issue, viz., whether or not an agreement existed to pay plaintiff's commissions to Selwyn and not to plaintiff, is erroneous, even though it may state a correct principle of law. Mayor, etc., of City of Liberty v. Boggess, Mo., 321 S.W.2d 677; Spalding v. Robertson, 357 Mo. 37, 206 S.W. 2d 517. The trial court did not err in refusing to give Instruction C.

■ The final point of defendant is that "The court erred in refusing to grant a new trial because of the cumulative prejudicial effect of the various errors, including errors of admitting hearsay and immaterial evidence."

There are a number of reasons why we should not consider this point. Defendant failed to mention this alleged error in his motion for new trial filed in the trial court. Conser v. Atchison, T. & S. F. Ry. Co., Mo., 266 S.W.2d 587. Defendant's argument merely reiterates the point and cites an excerpt from Kelsey v. Kelsey, Mo.App., 329 S.W.2d 272, and nothing more.

■ "It is the duty of an appellant to distinctly point out the alleged errors of a trial court and to show that he was prejudiced by the rulings alleged to be erroneous, and to make specific reference to pages in the transcript on appeal which disclose the bases for the contentions of error in a trial court's rulings." Jacobs v. Stone, Mo., 299 S.W.2d 438, loc. cit. 440; Schoenhals v. Pahler, Mo., 272 S.W.2d 228; Mo.Civil Rule 83.05, V.A.M.R. Defendant in its argument and in other places in its brief makes no specific reference to where in the transcript the alleged erroneous rulings may be found. We have no duty to search the record for the alleged errors. Schoenhals v. Pahler, supra. However, as we said, we did carefully examine the record in this case and in the course of said examination found no errors in connection with the admission of evidence over the objections of defendant that were prejudicial to defendant, and this is true when viewed in the light of the cumulative effect of all of the alleged errors.

The judgment of the trial court entered pursuant to the verdict of the jury under Count I is affirmed. The judgment of the trial court entered pursuant to the verdict of the jury under Count II is reversed.

WOLFE, P. J., and ANDERSON, J., concur.