R. P. LODJIC and Betty Lodjic, Plaintiffs-Respondents,

v.

Joseph G. KETTERLIN and Betty M. Ketterlin, Defendants-Appellants.

Nos. KCD 28600 and 28601.

Missouri Court of Appeals, Kansas City District.

Jan. 30, 1978.

Phillips & McElyea Corp., John L. Walker, Jr., Charles E. McElyea, Camdenton, for defendants-appellants.

Barry, Neff & Gallaher, James L. Barry and Victor Tell Neff, Jefferson City, for plaintiffs-respondents.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Consolidated appeals in actions arising out of real estate transactions between R. P. Lodjic, a builder, and his wife, and Betty M. Ketterlin, a real estate broker, and her husband. Defendants have appealed from portions of final decree favorable to plaintiffs.

The first action filed by Lodjic and his wife against Ketterlin and her husband

arose out of a joint venture among the parties for the purchase and development of a 73.34-acre tract in Miller County, known as "Bear Creek Farms." Title was taken in the names of the Ketterlins. The petition sought an adjudication that plaintiffs were owners of a one-half interest in the property and an accounting for proceeds of sales from the tract made by defendants. Count II of the petition sought judgment for 12,-696.53 for unreimbursed expenditures by plaintiffs in the development of Bear Creek Farms. The defendants denied that plaintiffs had an interest in the real estate and denied that they were obligated to plaintiffs for the amount claimed in Count II.

The matter was tried to the court which found for plaintiffs on both counts on basically the following findings of fact, a major portion of which were stipulated to and none of which are controverted here:

In June or July, 1971, plaintiffs and defendants entered into an oral agreement of joint venture for the purchase and development of a 73.34-acre tract in Miller County, known as "Bear Creek Farms." The purchase price of the property was $12,500, paid by $5,000 in cash, contributed equally by the parties with the balance borrowed and secured by a deed of trust. Title was taken in the name of the defendants but the parties agreed that the Lodjics and Ketterlins each should own an undivided one-half interest in the property and that each would share equally in the discharge of the obligation secured by the deed of trust. Defendants executed the note and deed of trust. The note was payable in one year.

Within one year of the date of the purchase of the property, defendants sold approximately 60 acres of the property and used the proceeds to pay off the note secured by the deed of trust. The $4,200 balance was divided equally between the parties.

On or about April 20, 1972, defendants sold a two-acre tract on the remainder of the property to Richard Schmidt for approximately $18,000.00. $1,857.50 of the sale price was used to pay closing costs and bills which were potential liens against the house built on the property. Plaintiffs received $1,000 cash out of the proceeds of the sale to Schmidt.

At about the same time as the sale of the two-acre tract, defendants sold the balance of the 73.34-acre tract, or some 11 acres, to Schmidt for $3,500.00. Schmidt gave his note for that amount secured by a deed of trust in payment. Schmidt defaulted in payments on the note and subsequently reconveyed the tract to defendants in consideration for the cancellation of the $3,500 note.

The court found that plaintiffs were entitled to a conveyance of an undivided one-half interest in the 11 acres remaining unsold and held in defendants' names and decreed that such title be vested in Lodjic and his wife.

On Count II of the petition, the court found that the parties agreed that plaintiffs should pay the cost of development of the property, to be reimbursed out of the proceeds of the sale of houses built thereon. The court found that the house sold to Schmidt had been built by plaintiffs and defendants; that plaintiffs had expended $15,079.03 in the development of the property and defendants $1,857.50; that of the $18,000 received from the sale to Schmidt, plaintiffs had received $2,235.97. The court held that plaintiffs were entitled to a net money judgment against defendants in the amount of $13,374.79 for the unreimbursed net profits on the sale and unreimbursed expenditures by plaintiffs on the property involved in the joint venture, together with interest.

In this court, the trial court's decree on this case is challenged on two grounds: 1. The trial court erroneously decreed a one-half interest in plaintiffs to the property without allowing defendants to present evidence as to the cost of improvements and money expended on the property after April 20, 1972. 2. The monetary judgment in plaintiffs' favor exceeded that asked in the prayer of plaintiffs' petition.

The first assignment of error arose during the examination by her counsel of Mrs. Ketterlin, as follows:

"Q When the property was reconveyed to you and your husband, were there any livable houses located on the 11 acre tract?

"A No, sir.

"Q After it was reconveyed to you and your husband, was a house or houses built on this 11 acre tract?

"A Yes, sir.

"Q Do you know who built this house, or houses?

"A My son and my husband.

"Q Was there one house or more than one house built?

"A One house.

"Q One house built. Do you know when construction was started on this house?

"A I can refer to my records and find out. About September 1st, roughly.

"Q Of what year, Ma'am?

"A 1972.

"Q Looking at your records, would you have any recollection as to the amount of money that this house cost?

"MR. BARRY: Your Honor, I am going to object to that. It's extremely general as to what it cost, and secondly, it's not shown that she needs to refer to her records yet. If they built the house, then there is a method to go by and show what was paid and, in fact, that it was necessary and reasonable, etc.

"THE COURT: What eventually happened to the 11 acres? Is it in the stipulation?

"MR. McELYEA: No, Your Honor, it is not.

"MR. BARRY: Only to the extent that title to the 11 acres at the present time is in the defendants.

"THE COURT: What's the purpose of the testimony about the house then?

"MR. WALKER: Well, I think it relates to the value of the property, as well as showing what was done with the property.

Your Honor, I think it's relevant, based on Count I of the prayer of the Miller County petition.

"THE COURT: What affirmative relief do you ask for? I don't see anything in here about a house on the 11 acres.

"MR. WALKER: Well, Your Honor, they are asking for a resulting trust and an undivided one-half interest in the property. This has to do with what they have put on the property and I think it would have a bearing as to the net result if the Court should find a resulting trust there.

"THE COURT: Well, but you don't plead any improvements on the property. So far as the pleadings are concerned, we're dealing with bare land, 11 acres. That's Mr. Barry's objection, that there is no pleading as to a house, and, therefore, it's immaterial.

"MR. WALKER: Yes, Your Honor. We will go on.

"THE COURT: All right. The objection is sustained."

■ The difficulty with appellants' assignment of error lies in the fact that there was no offer of proof made as to what the witness would say if she had been permitted to answer the question. The rule is that the exclusion of evidence cannot be found to have been reversible error if there is no showing of what the excluded evidence would have been. *Thayer v. Sommer,* 356 S.W.2d 72, 80–81[11, 12] (Mo.1962); *Stringer v. Reed,* 544 S.W.2d 69, 78[19] (Mo. App.1976).

■ In Count II of plaintiffs' petition dealing with the Bear Creek property, plaintiffs sought recovery of their unreimbursed expenses in the development of the property. The petition alleged expenses of $14,777.53, less credit of $2,081. The prayer was for judgment in the principal sum of $12,696.53. By stipulation, the parties agreed that the amount of plaintiffs' unreimbursed expenses was $15,079.03. The court found that plaintiffs had received from defendants $2,235.97 of the proceeds of the Schmidt sale. Defendants do not

question this finding. To the difference between the last two figures, the court added $531.73 as the plaintiffs' share of the profit from the sale of the Schmidt house and arrived at a judgment in favor of plaintiffs for $13,374.79.

The prayer to Count I of the petition sought recovery for plaintiffs' share of the profits from the sale of the house, without alleging any amount. That the court added that amount to the amount due under Count II and entered a single judgment for the monetary recovery by plaintiffs cannot have prejudiced defendants. The amount of plaintiffs' reimbursable expenses used by the court was based upon the stipulation to which appellants were a party. In such situation, the pleading is considered amended in accordance with the proof. Rule 55.-33(b); *Arzberger v. Grant,* 500 S.W.2d 23, 27[8] (Mo.App.1973). This claim of error is without merit.

The second cause of action arose out of a joint venture involving land in Camden County. Venue of that cause was changed to Miller County and the cause was consolidated with the previously discussed action involving the Miller County venture. Again, the basic facts upon which the trial court arrived at its judgment on the Camden County property are undisputed and are as follows:

In May, 1971, the parties entered into an oral agreement of joint venture for the purchase and development of lots No. 9, 10, 11, 12, 15, 16[20], 21[22] and 81.1 feet adjoining lot 16 of Makalu Estates, a Camden County subdivision. It was agreed that the defendants should take title in their names but that defendants and plaintiffs were each owners of an undivided one-half interest in the property. They were to share equally in the obligation to make payments on the property and in all profits derived from sales. Subsequently the parties agreed that lot 20 should be owned by the Lodjics alone and lot 22 by the Ketterlins. The purchase price for the property was $36,000. The parties shared the $5,400 down payment equally. The Lodjics contributed $3,180.27 toward further payments

and paid one half of the 1971 taxes. Lodjic informed Ms. Ketterlin that he would be unable to contribute his share of the payment due in December, 1972 and he made no contribution thereafter. All subsequent payments to the seller were made by the Ketterlins. In all, the purchase price of $36,000 plus $3,065.25 interest was paid.

Beginning in the fall of 1972 the Ketterlins sold four of the lots and the 81.1 feet adjoining lot 16. One of the lots was sold with a house on it, built by the Ketterlins, and the lot was not priced separately. The remaining tracts, which cost $14,000, were sold for $17,750. No accounting of the profit was made to Lodjic.

■ In this court, defendants contend that the decree of the trial court is erroneous because plaintiffs abandoned the joint venture when they failed to make their portion of the payments of the purchase price.

Defendants rely upon a statement of law, found in 48 C.J.S. Joint Adventures § 4a, page 821 (1947):

"Default by the other party. If either or any party to a joint adventure abandons or repudiates it, or wholly defaults in the performance of his part of the agreement, or if his entire interest in the enterprise is seized by a creditor, *the other party or parties are not required to perform his or their part of the agreement and may, at their option, terminate the enterprise.*" (Emphasis supplied)

The italicized portion of this quotation is overlooked by defendants. The default of plaintiffs may well have provided a basis for termination of the venture, but there is no evidence that defendants undertook to do so. They gave no notice to plaintiffs of their intention to abandon the venture.

Defendants also overlook the following statement found on the same page as the statement upon which they rely:

"Notice of termination. A joint adventure cannot be terminated by one or more of the parties to it, *even if a valid reason exists for doing so,* without giving notice of termination to the other party or parties." Ibid., emphasis supplied.

In this case of *Shearer v. Davis,* 67 Cal. App.2d 878, 155 P.2d 708 (1945), the only case cited by defendants, the co-venturer who was financing a project involving development of airplane wings, informed his co-venturer not only that he would provide no more money but also told him that the project was "finished." There was, thus, evidence in that case of notice of termination of the venture, not present in this case.

Defendants have not demonstrated that the trial court's ruling was erroneous.

Defendants' next assignment of error is related to another transaction between the parties, the purchase of a lot in Sun Swept East Subdivision in Camden County, by plaintiffs from defendants. Again, although the testimony on this issue was in some regards in conflict, defendants do not question the court's findings of fact. Basically, the facts are as follows:

Defendants were the owners of a lot with a cottage on it in Sun Swept East Subdivision. In May, 1971, plaintiffs agreed to purchase the property from defendants for $7,500. Plaintiffs paid $100 on the purchase price and it was agreed that construction services, labor and materials furnished to defendants by plaintiffs on various projects were to be applied against the balance of the purchase price. The petition alleged that, under the sales contract, the purchasers were entitled to a deed to the property when $1,500 had been paid or credited on the purchase price, with the purchasers to give a deed of trust to the sellers for the balance. The defendants denied that this was the agreement and alleged that the purchasers were to receive a deed only when the full amount of the purchase price was paid. The contract of sale has not been filed here and the transcript is silent insofar as proof of the allegation of either party is concerned.

There was evidence that plaintiffs provided services to defendants in various projects of the value of $3,809.64, for which plaintiffs had not been reimbursed.

Lodjic testified that he requested a deed to the property but did not receive it. Ms. Ketterlin denied that he had requested a deed. She said: "Mr. Lodjic owed me money and I owed him money. We were to get together and settle the whole thing. He would get the deed; he would get anything he needed when our agreement was completely settled. We never got together."

Lodjic did not pay the $10 monthly subdivision assessment against the property after one payment in 1972. Ms. Ketterlin paid the taxes for 1972 and thereafter at the rate of $83.52 per year. She also paid for the insurance on the property since 1972 at a rate of $90 per year. Lodjic did take possession of the property and retained possession of it.

The Lodjics' petition sought a conveyance to them of the property or alternatively a judgment against the defendants for $3,810.90 or alternatively that defendants be ordered to give plaintiffs credit against the purchase price in that amount.

Defendants' counterclaim alleged that plaintiffs had retained possession of the property although they had not made the payments as agreed. The counterclaim alleged that the defendants were willing to give a deed to plaintiffs upon payment of the purchase price. The counterclaim prayed for judgment ordering plaintiffs to accept a deed and pay defendants the balance of the purchase price and the sum of $222.24 representing assessment, taxes and insurance on the property. Alternatively the prayer was for an order that plaintiffs relinquish possession of the premises to defendants.

The trial court found that the parties had terminated, rescinded and abandoned the sale contract and that defendants were the absolute owners of the property as against plaintiffs and directed that plaintiffs surrender possession of the property to defendants. The trial court further found that defendants were indebted to plaintiffs for $3,809.64 for construction services furnished defendants and entered judgment accordingly.

In this court, defendants contend that the trial court erred in finding that the contract had been rescinded and terminated. De-

fendants argue that there was no evidence that they accepted an offer to rescind the contract or that they offered to rescind or in any manner waived their right to enforce the contract against plaintiffs.

■ The defendants are not aggrieved parties insofar as the trial court ordered that possession of the property be delivered to them and declared them to be the sole owners of the tract because that is relief alternatively requested by defendants. See *Eissler v. Eissler,* 468 S.W.2d 217, 218[1, 2] (Mo.App.1971). The trial court did not grant the monetary recovery requested by defendants, but their assignment of error does not assert that the trial court erred in failing to find for them for the assessments, taxes and insurance which they paid. In any event, any such claim could not be reviewed here inasmuch as defendants have not filed as an exhibit the contract on which their claim must rest.

Defendants do assert that the trial court erred in awarding plaintiffs judgment for $3,809.64 plus interest. However, defendants do not demonstrate that the court's finding was unsupported by the evidence, contrary to the weight of the evidence or unauthorized by law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976).

■ The final claim of error is based upon the trial court's failure to find in favor of Ms. Ketterlin on a claim for commission owed her on the Cearnal house. Count I of defendants' counterclaim alleged that R. P. Lodjic and Ms. Ketterlin entered into an agreement whereby Lodjic would pay Ms. Ketterlin a commission of $1,000 on each Farmers Home Administration program house built by Lodjic and sold by her and a 6% commission on each conventional house sold by her. Lodjic agreed to pay Ms. Ketterlin for his long distance telephone calls and one half of a secretary's salary. The claim alleged that Ms. Ketterlin sold a number of houses for Lodjic and that he owed her commission totalling $5,850 which he failed to pay. The counterclaim also alleged that Lodjic owed $136.73 for telephone calls and $331.25 for secretary's salary under this agreement and failed to pay.

By stipulation, the parties agreed that such an arrangement had been made. Lodjic admitted that Ketterlin was entitled to commissions of at least $3,350, but he denied that she was entitled to a $2,500 commission on the Cearnal house. The trial court entered judgment in favor of Ms. Ketterlin on the counterclaim of $3,350 commissions, $136.73 for telephone calls and $331.25 as Lodjic's share of the secretary's salary, and entered judgment in favor of Ms. Ketterlin and against Lodjic for $3,817.98 plus interest.

According to Ms. Ketterlin, the Cearnals owned a lot on Horseshoe Bend on the Lake of the Ozarks and they came to her looking for a builder to erect a house for them. She arranged for Lodjic to do the work and he built the house. She said that Lodjic told her that he would pay her a commission for the Cearnal job and that she had an arrangement with Lodjic that he was to pay her 5% of the total cost of the house. She said that she did not know the cost of the Cearnal house, but that Lodjic told her he would pay her $2,500 commission on the deal. She said that the Cearnal house was the first she sold for Lodjic. "I sold many other houses after that for him * * *."

Lodjic testified that the Cearnal house was built by Hill View Acres, a corporation for which he built houses, and was sold by Hill View Acres.

On this conflicting evidence, the trial court's ruling is not to be held erroneous. The trial court could have found for Ms. Ketterlin on the basis of her testimony (all evidence on the subject was oral), but he was not obliged to do so. Ms. Ketterlin testified to an agreement whereby she was to receive a commission of 5% on houses sold by her for Lodjic. She did not know the cost, on which her commission depended under the agreement, of the Cearnal house and fell back on an oral agreement by Lodjic to pay her $2,500.00. She did not know whether or not the Cearnals contracted with Lodjic to build the house and according to Lodjic, the house was built not by him but by a corporation for which he

sometimes worked. The trial court cannot be convicted of error for failing to accept Ms. Ketterlin's version of the transaction.

Judgments affirmed.

All concur.