Mary Etta RANSOM, a widow individually, and Clarence Lamont Ransom, a minor, Andre Maurice Ransom, a minor, Marvin Lavelle Ransom, a minor, Felicia Renee Ransom, a minor, Timothy Quinton Ransom, a minor, Lydell Lamar Ransom, a minor, Derrell (NMN) Ransom, a minor, Terrance Ramon Ransom, a minor, all by and through their next friend, Mary Etta Ransom, Plaintiffs-Appellants,

v.

ADAMS DAIRY COMPANY, d/b/a Velvet Freeze, C.A.S. Enterprises, Inc., and Alfred (NMN) Stewart, Defendants-Respondents.

No. 47558.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 15, 1985.

Stephen Joseph Nangle, Clayton, for plaintiffs-appellants.

James E. Whaley, Leo V. Garvin, St. Louis, for defendants-respondents.

SATZ, Presiding Judge.

On the morning of December 31, 1978, Clarence Ransom (Ransom) entered an ice cream, confectionary store and was shot to death by the operator of the store, defendant Alfred Stewart (Stewart). Ransom's widow and children sued Stewart and the

owner of the ice cream franchise, defendant C.A.S. Enterprises, Inc. (C.A.S.), for the wrongful death of Ransom.[1]

At the close of plaintiffs' case, the trial court sustained defendant C.A.S.'s motion for a directed verdict. The jury later returned a verdict for defendant Stewart against plaintiffs. Judgment was entered accordingly. We affirm.

We first address plaintiffs' appeal from the judgment in favor of defendant Stewart. To do so, we use only the evidence and inferences favorable to Stewart and disregard that which is unfavorable. *See, e.g., Affiliated Foods, Inc., v. Strautman,* 656 S.W.2d 753, 763 (Mo.App.1983).

On December 31, 1978, defendant Stewart was shoveling snow off the sidewalk in front of the Velvet Freeze store he operated. Decedent Ransom, on his way home from a relative's house, entered the store, mumbling about someone being the devil. He walked past the customers in the store and entered a back storeroom. Believing Ransom was acting unusually, Stewart followed Ransom into the store and asked Ransom to come out of the back. Ransom came out of the storeroom area, yelled at Stewart that Stewart was the devil and that one of them was going to heaven that morning.

Ransom then grabbed a young female customer from behind and, after telling her he was not going to hurt her, released her. He then shuffled into, grabbed or hit a male customer. Both customers feared for their safety. At this point, Stewart told Ransom to leave his customers alone and get out of the store. Ransom turned and rushed toward Stewart, proclaiming Stewart was "nothing but the devil." Stewart told Ransom to get back and pulled out a gun. Ransom said: "Shoot, I don't care." Stewart shot Ransom in the head.

Additional evidence showed that, in 1975, Ransom was confined to the hospital for about three months for mental problems, and that, in early 1978, he was again con-fined for about three months for similar mental problems. After discharge from the hospital, he was on medication as an out-patient.

Plaintiffs complain the trial court improperly permitted inquiry into prior, specific violent acts of the decedent Ransom. The inquiry, plaintiffs argue, interjected Ransom's character into evidence and, thus, prejudiced plaintiffs. We disagree.

The issue of Ransom's violent acts was initially raised by defendants in an extended pre-trial conference and was repeatedly raised throughout this protracted trial. Explicitly stating its awareness of the possible prejudice that could be worked by the admission of such evidence, the trial court was equally explicit in stating that Ransom's medical history was relevant for the limited purpose of showing his ability or, rather, inability to earn an income. The court consistently maintained this position and, when appropriate, rejected inquiry into any specific acts of violence.

This issue, however, arose again during cross-examination of Ransom's widow, and, after extended discussion at the bench, the court permitted Stewart's counsel to ask Ransom's widow one limited question: whether Ransom became violent "when he didn't take his medication." Apparently, unexpectedly, she, in effect, denied Ransom was violent when off his medication. The court then permitted counsel to cross-examine her further. In response to additional questions, she testified that if she had previously said Ransom had intentionally set their house on fire, she was now saying it was an accident, that on the occasion of the fire, Ransom did "sling" furniture around and that she did take the children to another part of the house to protect them from him.

We find no abuse of discretion here. Evidence which tends to prove or disprove a fact in issue is relevant and, therefore, admissible. *E.g., Arie v. Intertherm, Inc.,* 648 S.W.2d 142, 154 (Mo.App.

---

1. Plaintiffs also filed suit against Adams Dairy Co., Inc., d/b/a Velvet Freeze. Adams Dairy Co. was granted summary judgment before the trial began and is not a party to this appeal.

1983). In a wrongful death action, the decedent's contribution to the support of his dependents is an essential issue and, thus, among other facts, his health and earning capacity while alive are relevant. *Grothe v. St. Louis-San Francisco Ry.,* 460 S.W.2d 711, 718 (Mo.1970). The trial court, here, correctly permitted Ransom's widow to be questioned about Ransom's history of breakdowns and treatment. *See, e.g., Spalding v. Robertson,* 357 Mo. 37, 206 S.W.2d 517, 523 (1947); *Kribs v. Jefferson City Light, Heat, & Power Co.,* 199 S.W. 261, 263 (Mo.App.1917). Moreover, after she denied that Ransom became violent when not on medication, the court's carefully considered decision to permit inquiry into specific acts of violence was not an abuse of its considerable discretion to determine the appropriate scope of cross-examination. *See, e.g., Shepard v. Harris,* 329 S.W.2d 1, 12 (Mo. banc 1959); *Gant v. Hanks,* 614 S.W.2d 740, 744 (Mo.App.1981). Furthermore, evidence admissible for one purpose may be admitted even though it may be improper for other purposes. *Martin v. Yeoham,* 419 S.W.2d 937, 950 (Mo. App.1967). Thus, if requested, plaintiffs may have been entitled to an instruction limiting the use of the acts in question to the issue of Ransom's ability to earn income, *Thigpen v. Dodd's Truck Lines, Inc.,* 498 S.W.2d 816, 818 (Mo.App.1973). Plaintiffs did not make this request and, therefore, cannot now be heard to complain on appeal. *Id.* at 818.

Plaintiffs also contend the trial court erred in submitting an unmodified version of the self-defense instruction, MAI 32.11. As submitted, the instruction reads:

■ "Your verdict must be for defendant Alfred Stewart if you believe:

First, defendant Alfred Stewart had reasonable cause to apprehend and did apprehend great bodily harm from decedent, and

Second, defendant Alfred Stewart did not create the situation which caused his apprehension, and

Third, the shooting of decedent was in defense against this apprehended great bodily harm, and

Fourth, defendant Alfred Stewart used only such force as was reasonable and necessary."

Plaintiffs contend the first paragraph of the instruction should have been modified to include the phrase "imminent danger of death" and, thus, read: "defendant Alfred Stewart had reasonable cause to apprehend and did apprehend imminent danger of death or great bodily harm...." Without this modification, plaintiffs argue, the instruction withdrew the issue of the excessiveness of the force used. We disagree.

MAI 32.11 lists three optional phrases to be used in the first paragraph of the instruction, with a note that the phrase appropriate to the force used is to be selected. None of the three include the words plaintiffs urge should be included.[2]

Plaintiffs cite *Martin v. Yeoham,* 419 S.W.2d 937, 950 (Mo.App.1967) for the proposition that "[u]nder Missouri decisions the existence of reasonable cause for apprehension of *mere bodily injury* is not sufficient to justify a shooting in self-defense. There must be reasonable cause of apprehension of imminent danger of death or *great bodily harm.*" (Emphasis theirs) In the instant case, however, apprehension of "mere bodily injury" was not submitted to the jury. Apprehension of "great bodily harm" was submitted. By use of the disjunctive "or", the Court in *Martin,* equated apprehension of "great bodily harm" with apprehension of "imminent danger of death" and, thus, either apprehension would justify "a shooting in self-defense." *Id.* at 950. Understandably, subsequent to the *Martin* case, this court held there is no error in not including the phrase "imminent danger of death" in the self-defense instruction in issue, MAI 32.11. *See Moore v. Smith,* 657 S.W.2d 664, 667 (Mo.App. 1983).

---

**2.** The three phrases listed are: great bodily harm from plaintiff; bodily harm from plaintiff; and offensive conduct from plaintiff. *See* MAI 32.11.

Plaintiffs next contend the trial court erred in precluding them from using Stewart's alleged history of drug abuse to impeach Stewart's credibility. We disagree.

At trial, plaintiffs' counsel made an offer of proof based upon the alleged records of Stewart's drug treatment at the St. Louis State Hospital Drug Abuse Clinic. According to counsel, these records show: (1) Stewart had a long history of treatment for drug abuse and an even longer history of drug use, (2) Stewart had a "dirty urine sample" on January 1, 1979, one day after the shooting in question, and (3) on January 3, 1979, in response to his drug counselor's inquiry about the dirty urine sample, Stewart responded he had used "illicit drugs because he was sick and medication didn't hold him." To give relevant meaning to this showing, counsel told the trial court that he could produce an expert who, based upon this showing, would testify that Stewart's ability to perceive, recall and relate was seriously impaired. The court found the expert's name was not timely given to opposing counsel, prohibited the use of the expert and, therefore, overruled the offer of proof and sustained defense counsel's objection to the admissibility of this evidence.

Having failed with this argument, plaintiffs' counsel then argued that the facts in Stewart's treatment record were admissible without accompanying expert testimony. More specifically, he argued and now argues on appeal that, even without supporting expert testimony, Stewart's "dirty urine sample" on January 1, 1979 and Stewart's statement on January 3, 1979 that he had been using illicit drugs was sufficient circumstantial evidence to show Stewart was under the influence of drugs on the day in question. In addition, he argued and now argues that, even without supporting expert testimony, evidence of Stewart's history of drug use and treat-ment was admissible to show Stewart's inability to perceive, recall or relate.

Plaintiffs base their arguments on *Markowitz v. Markowitz*, 290 S.W. 119, 122 (Mo.App.1927) which, plaintiffs read, as holding:

> "The evidence of a witness who was under the influence of a drug at the time of the occurrence to which he testifies or is under such influence at the time of testifying is unreliable and the jury should be carefully warned as to the credence to be given to it."

Plaintiffs misinterpret the holding of *Markowitz*. The issue the court addressed was simply whether the trial court "erred in admitting expert testimony as to the reliability of a witness who was a drug addict." *Id.* at 122. Obviously, the holding in *Markowitz* dealt with the narrow issue of the admissibility of expert testimony; an issue plaintiffs, understandably, have abandoned on appeal.

Research has disclosed no precedent in Missouri for admitting evidence of Stewart's drug use and treatment to impeach his credibility without expert testimony. On the contrary, analogous cases strongly suggest the opposite result. *See, e.g., State v. Booth*, 423 S.W.2d 820, 824 (Mo. 1968).

▮▮▮ Plaintiffs here did not show the precise mental effects on Stewart from the use of drugs were common knowledge. On the present record, this evidence of Stewart's drug use and treatment standing alone was not admissible to show Stewart's inability to perceive, recall, or relate, nor would it be admissible to impeach Stewart's testimonial credibility. *See Annot., Competency of Witness-Drug Use*, 65 A.L.R.3d 705 (1975).[3]

▮▮▮ Plaintiffs next argue the trial court abused its discretion in sustaining

---

**3.** The record does not clearly show the procedural method plaintiffs planned to use to proffer the records in question. They could not use Stewart to establish the evidence in these records. Although plaintiffs did call Stewart as a hostile witness, they could not impeach his credibility by direct examination. *See e.g., Lamb v. Heiligers*, 532 S.W.2d 820, 825 (Mo.App. 1975). The exception to this ban against direct impeachment is the use of the adverse witness' prior inconsistent statements. *Id.* at 825 n. 2.

defendant C.A.S.'s objection to plaintiffs' use of Stewart's deposition during cross-examination of Stewart. The deposition was taken before C.A.S. was joined as a party in the instant case. At trial, C.A.S. claimed prejudice because it was not represented for purposes of cross-examination when the deposition was taken. Plaintiffs argue that Stewart's deposition testimony could be introduced simply as prior inconsistent statements without referring to the statements being made in a deposition under oath. Plaintiffs' counsel, however, failed to make an offer of proof showing what inconsistent statements he expected to use from the deposition. Without an offer of proof, nothing is preserved for appellate review. *Brazell v. St. Louis Southwestern Railway*, 632 S.W.2d 277, 284 (Mo.App. 1982); *Lodjic v. Ketterlin*, 562 S.W.2d 378, 381 (Mo.App.1978).

Plaintiffs also contend it was prejudicial error for the trial court to sustain defendant C.A.S.'s motion for a directed verdict at the close of plaintiffs' case. We find no prejudice.

■ For the purpose of this issue, we will overlook the pleading, procedural and substantive defects the trial court used to support its ruling. We will assume

plaintiffs' petition reflected, as plaintiffs contend, three theories of recovery against C.A.S.: (1) respondeat superior, based upon a principal/agent relationship between C.A.S. and Stewart, (2) negligent hiring and retention, based upon an employer/employee relationship between C.A.S. and Stewart, and (3) negligent entrustment, based upon a lessor/lessee relationship between C.A.S. and Stewart.[4] Each of these theories is a theory of derivative or dependent liability.[5] C.A.S. could be liable only if Stewart was liable for his conduct. Since the jury found Stewart not liable, C.A.S. would not be liable. Therefore, if Stewart's liability was submitted to the jury without exclusion of relevant evidence, plaintiffs suffered no prejudicial error from the trial court's ruling.

Plaintiffs apparently argue that Stewart's alleged drug use and prior criminal convictions are relevant to the issues of both C.A.S.'s and Stewart's liability, and this evidence, plaintiffs argue, was improperly excluded. Plaintiffs argument, however, is not persuasive.

■ We will assume that Stewart's drug use and prior convictions are relevant to show Stewart is incapable to use a gun reasonably[6] and, therefore, relevant to

**4.** Among other findings, the trial court found plaintiffs' evidence insufficient to show a principal/agent or employer/employee relationship between C.A.S. and Stewart, and, therefore concluded C.A.S. could not be liable as a principal for Stewart's conduct nor liable for negligent hiring. The court also found that plaintiffs had not properly pleaded a negligent entrustment theory and would not permit plaintiffs to amend their pleading.

**5.** To recover on a negligent hiring and retention theory, a plaintiff must prove: the defendant employer knew or should have known of the employee's dangerous proclivities and the defendant employer's negligence was the proximate cause of plaintiff's injury. *See Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo.App. 1983); *Strauss v. Hotel Continental Co.*, 610 S.W.2d 109, 114–115 (Mo.App.1980).

To recover on a negligent entrustment theory, a plaintiff must prove: (1) the entrustee was incompetent by reason of age, inexperience, habitual recklessness or otherwise; (2) the defendant entrustor knew or had reason to know of the entrustee's incompetence; (3) there was an

entrustment of the chattels; and (4) the negligence of the entrustor concurred with the conduct of the entrustee as a proximate cause of the harm to the injured party. *See Evans v. Allen Auto Rental and Truck Leasing, Inc.*, 555 S.W.2d 325, 326 (Mo. banc 1977).

**6.** In assuming the admissibility of the drug use and prior convictions, we do not minimize the critical relevancy issue nor do we minimize other procedural and substantive problems considered by the trial court in excluding this evidence. For example, no conviction involved the use of a gun and the last conviction was in 1965, 13 years before the incident in question. Thus, the relevancy of these convictions to show Stewart's incompetence to handle or dangerous proclivities in handling a gun is highly questionable. *See, e.g., Evans v. Allen Auto Rental and Truck Leasing Inc.* 555 S.W.2d 325, 327 (Mo banc 1977) (Bardgett, J. concurring) (negligent entrustment); *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 n. 2 (Mo.App.1983) (negligent hiring and retention).

Moreover, plaintiffs attempted to introduce Stewart's prior convictions through direct exam-

show C.A.S. should not have given a gun to Stewart, as an agent, or, should not have hired Stewart as an employee with access to a gun, or, should not have entrusted him as a lessee with a gun. This assumed relevance, however, does not make this evidence relevant to the issue of whether Stewart acted as a "reasonable person" in shooting Ransom. This self-defense issue is an objective not a subjective standard. Thus, Stewart's proclivities or propensities are irrelevant to this issue. The jury did, in fact, consider the self-defense issue without considering this irrelevant evidence and found Stewart was not liable for his conduct. Since C.A.S.'s liability is derivative of or dependent upon Stewart's liability, plaintiffs were not prejudiced by the trial court sustaining C.A.S.'s motion for a directed verdict.[7]

Judgment affirmed.

GAERTNER and STEWART, JJ., concur.

---

ination of Stewart. Although plaintiffs called Stewart as a hostile witness, plaintiffs could not directly impeach him except by prior inconsistent statements. *See, e.g., Lamb v. Heiligers,* 532 S.W.2d 820, 825 (Mo.App.1975).

7. On appeal, plaintiffs also complain the trial court erred in excluding an insurance contract secured by C.A.S. and a letter apparently written by C.A.S. to Stewart. Plaintiffs argue that both documents are relevant to show the business relationship between C.A.S. and Stewart. The above discussion demonstrates this business relationship is irrelevant to a proper disposition of this case. Thus, we do not address this complaint of plaintiffs.