**HENGES ASSOCIATES, INC.,**
**Plaintiff–Appellant,**

v.

**INDUSTRIAL FOAM PRODUCTS, INC.,**
**Defendant–Respondent.**

**No. 56180.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 24, 1990.

Thomas H. Falivene, Robert E. Guest, St. Louis, for plaintiff-appellant.

Thomas R. Dowd, St. Louis, for defendant-respondent.

SATZ, Presiding Judge.

In this breach of contract action, plaintiff, Henges Associates, Inc. (Henges), sued defendant, Industrial Foam Products, Inc. (Industrial Foam), for breach of contract and breach of implied warranties. Industrial Foam counterclaimed for payments allegedly due it for materials supplied to Henges in subsequent transactions, unrelated to this alleged contract. The jury returned verdicts in favor of Industrial Foam on Henges' claim and Industrial Foam's counterclaim. Henges appeals. We affirm.

Henges is a supplier of commercial construction materials. Industrial Foam is a laminator of synthetic foam to various

types of wood panels. In 1984, Henges, apparently, began preparing to make a bid to supply materials for a construction project in Chicago. According to Mr. Jack Seifert, Henges' executive vice-president, Henges, through its purchasing agent, Ms. Ruth Schot, contacted Industrial Foam for a price to laminate some materials together to form panels. Mr. Seifert was unsure when Henges first contacted Industrial Foam about this job, testifying it was "[p]robably" or "possibly ... in November. Might have been in October," apparently in 1984. Henges used the price from Industrial Foam in submitting its bid and was awarded a contract. On December 4, 1984, Henges sent a purchase order to Industrial Foam. Henges acquired the materials and sent them to Industrial Foam for lamination.

James Gibbar, president of Industrial Foam, testified the December 4 purchase order was different from all other orders Henges had sent Industrial Foam. Henges wanted Industrial Foam to laminate formica to flake board. Industrial Foam had had no experience in laminating formica to flake board. Its experience was in laminating foam to wood panels. According to Mr. Gibbar, Industrial Foam had decided not to do the work at its plant, but, he said, after a telephone conversation between Mr. Mike Henges, the vice-president of Henges, and Mr. Larry Sanguinette, Industrial Foam's plant manager, Industrial Foam decided to do the work.

In December 1984 and January 1985, Industrial Foam delivered a total of 420 completed panels to Henges as agreed upon. Without inspecting the panels, Henges delivered them to the construction site in Chicago. A short time after being installed, some of the panels began to separate into their component parts. Attempts by Henges to relaminate the panels proved unsuccessful. Henges sent Industrial Foam a letter giving notice of the damages resulting from the separation of the panels. According to Henges, Industrial Foam did not respond.

Because of contractual obligations to the general contractor on the construction project in Chicago, Henges procured replacement materials to supply the project as required. These replacement costs, in both materials and labor, along with expenses arising from delays because of the remedial activities were the measure of Henges' damages.

The parties concede the existence of a contract between them for the lamination of the panels. Disagreement between them arises over whether the contract included implied warranties of merchantability and of fitness for a particular purpose.

Under Section 400.2–314 RSMo 1986, every contract for the sale of goods, in which the seller is a merchant of goods of that kind, includes a warranty of merchantability unless it has been excluded or modified. Section 400.2–315 RSMo 1986 imposes an implied warranty of fitness for a particular purpose on certain contracts for goods. Unless excluded or modified, the warranty applies where the seller knows the particular purpose for which the goods are required and knows the buyer is relying on the seller's skill or judgment to supply suitable goods.

Henges contends the contract it entered into with Industrial Foam included these implied warranties. Industrial Foam contends these implied warranties were excluded from the contract.

This dispute centers in part on the telephone conversation Industrial Foam contends took place between Mr. Mike Henges and Mr. Sanguinette before December 4, 1984, the date Henges' sent its purchase order to Industrial Foam. At trial, Mr. Henges implicitly denied the telephone conversation took place. He testified his "first contact" with Industrial Foam was after the laminated panels had been delivered to the Chicago job site and he began to receive complaints.

■ Industrial Foam contended the telephone conversation took place and also contended that, during the telephone conversa-

tion, Mr. Sanguinette expressly excluded the warranties in question. To support its contention, Industrial Foam called as a witness one of their secretaries, Ms. Faye Gibbar. Over Henges' objection that her testimony was hearsay,[1] Ms. Gibbar testified that she listened to the telephone conversation between Mr. Henges and Mr. Sanguinette on another telephone, a standard practice at Industrial Foam. According to her, Mr. Sanguinette told Mr. Henges that Industrial Foam was reluctant to laminate the panels because of Industrial Foam's inexperience in bonding board to board. Verbatim, she testified:

> And [Mr. Sanguinette] told [Mr. Henges] ... we're in the foam business, ... and we're happy doing your laminating foam, ... we know nothing about this. We've already told you that we don't want to do this. We're not familiar with this and we don't want to do this.

Then, she testified, Mr. Sanguinette said Industrial Foam would do the job only as "an experiment", "out of ... consideration that you were (sic) our largest customer" and "[w]e would have no guarantee because we did (sic) not know anything about it."

Henges contends this testimony is hearsay, which was improperly admitted to its prejudice. We disagree.

Hearsay testimony is in-court testimony of an extra-judicial statement offered to prove the truth of the matters asserted in the statement, and the value of the testimony depends upon the credibility of the out-of-court declarant. *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981). When, however, the testimony is offered only to show the statement was made without regard to the truth or falsity of the statement itself, the testimony is not hearsay. *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.*, 615 S.W.2d 574, 583–84 (Mo.App.1981).

Here, Ms. Gibbar's testimony was not hearsay. Her testimony was offered to prove a term of the contract between Henges and Industrial Foam. That term was the exclusion of any implied warranties of merchantability and fitness for a particular purpose. The truth or falsity of the statements made by Mr. Sanguinette was not in issue; rather, the issue was whether he did make the statement that his company, Industrial Foam, would do the lamination with no guarantees. That is all Ms. Gibbar testified to.

Section 400.2–316 RSMo 1986 sets forth several ways in which implied warranties may be removed from contracts. Industrial Foam simply called Ms. Gibbar to show exclusion by one of those methods: language which calls the buyer's attention to the exclusion and makes plain that there is no implied warranty. § 400.2–316(3)(a). Ms. Gibbar's testimony that Mr. Sanguinette told the Henges representative that the panel lamination work would be performed without a guarantee evidences this method of exclusion.

Henges also argues another portion of the telephone conversation was hearsay. As quoted above, Ms. Gibbar testified Mr. Sanguinette told Mr. Henges that Industrial Foam was not familiar with laminating formica to flake board. Henges argues it is the truth of this statement—Industrial Foam had not done this kind of work before—that was being proffered to negate the existence of the implied warranties. This argument is misdirected and, thus, misses the mark.

An equally sensible interpretation of this part of Ms. Gibbar's testimony is that it explained why Industrial Foam, through Mr. Sanguinette, was excluding any implied warranties. The trial court allowed Ms. Gibbar to testify Mr. Sanguinette excluded all warranties. The further testimony that Mr. Sanguinette told Mr. Henges Industrial Foam had not done work like this before explains why no warranties were being given. Regardless of whether Mr. Sanguinette was telling the truth, his statement

---

1. Henges did not object to this testimony on the grounds that it was irrelevant because the implied warranties in issue could not be excluded orally.

can be construed simply as showing his stated reason for excluding any warranties.

Assuming Henges is correct that the truth of the representation may have been relevant, that would not mean this testimony was inadmissible. Evidence that is admissible for one purpose but inadmissible for another is still admissible at trial. *Ransom v. Adams Dairy Co.*, 684 S.W.2d 915, 918 (Mo.App.1985). Henges may then have been entitled to an instruction that this part of Ms. Gibbar's testimony could not be used for the truth of the representation. *Id.* However, it did not request such an instruction. Henges cannot now complain about the admission of this testimony. *Id.*

Henges also contends the court erred in failing to instruct the jury 1) on Henges' alleged right of set-off, and 2) that waivers of implied warranties must be in writing. However, Henges has failed to "set forth [these instructions] in full in the argument portion of [its] brief." Rule 84.-04(e). Consequently, these contentions of Henges are not properly before us for review. *Peck v. Jadwin,* 704 S.W.2d 708, 712 (Mo.App.1986).

Judgment affirmed.

SMITH and GRIMM, JJ., concur.