**Marvin C. HENDRIX, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 74126.

Missouri Court of Appeals, Western District.

June 26, 2012.

Mark A. Grothoff, Columbia, MO, for appellant.

Karen L. Kramer, Jefferson City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES E. WELSH, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Marvin Hendrix ("Hendrix") appeals from the motion court's judgment overruling his Rule 29.15 motion. Hendrix claims that the trial court clearly erred because he received ineffective assistance of counsel. Hendrix contends that trial counsel failed to investigate and present evidence of his medical history in support of his self-defense claim and that trial counsel failed to request lesser-included jury instructions for assault in the second degree and assault in the third degree. We affirm.

## Factual and Procedural Background

Viewed in the light most favorable to the verdict, the facts relevant to this appeal are as follows. In April 2004, Hendrix lived in the Rabbitsfoot subdivision in Benton County. Hendrix's next-door neighbor was Bryan Paynter ("Paynter"), nicknamed "Tank." The property line between the two parcels was indicated by a power pole; Paynter lived on the left side of it and Hendrix lived on the right. Paynter was moving out of his residence to another home about an eighth of a mile away.

On April 15, 2004, Paynter had moved everything from his old residence except for a 4x4 vehicle frame and a couple of odds and ends. That morning, Paynter borrowed Hendrix's air tank to fill his flat tires. After using the air tank, Paynter took it to his new home. The police were called, and Paynter gave the police officers the air tank to return to Hendrix.

Later that day, Paynter returned to his old residence with his sister-in-law and his step-son to move the rest of his personal property. According to Paynter's testimony, Paynter and Hendrix were negotiating a trade for the 4x4 vehicle frame but the deal was never completed. Hendrix did not agree, though. He believed the deal was complete and that he owned the frame. Because Paynter believed the negotiation was incomplete, he decided to move the frame to his new residence to prevent Hendrix from taking it.

When Paynter, his sister-in-law, and his step-son arrived at his old residence, Hendrix was sitting on his own front deck. The 4x4 vehicle frame was located in Paynter's driveway. After parking his vehicle in front of the frame, Paynter tied a chain to the front bumper of the frame to connect it to his vehicle. Paynter's plan was to use his vehicle to tow the 4x4 vehicle frame to his new home. While Paynter

was in the process of tying the chain to the frame, Hendrix yelled that if Paynter took the 4x4 vehicle frame, Hendrix would "kill every one of us." Paynter ignored Hendrix's threats until he heard a gunshot.

Paynter's sister-in-law, Sandra Carter ("Carter"), testified that Hendrix was pointing the gun at her when the first shot was fired. Carter told Paynter's step-son to run. Paynter crawled out from underneath the vehicle and told Hendrix to quit shooting. Hendrix fired a second shot. Paynter then walked toward Hendrix, and Hendrix fired two more shots from a distance of approximately five feet. One of those shots struck Paynter in the leg. Then, Paynter and Hendrix stood on their respective properties—with the property line dividing them—and argued for a few minutes. Eventually, Hendrix used his cell phone to call the police.

Hendrix was charged with one count of assault in the first degree in violation of section 565.050 [1] and one count of armed criminal action in violation of section 571.015. A jury trial was held, during which Hendrix presented a self-defense theory. The trial court instructed the jury as to first-degree assault, armed criminal action, and self-defense. No instructions regarding assault in the second degree and assault in the third degree—the lesser included offenses—were given to the jury. The jury rejected Hendrix's self-defense claim and found Hendrix guilty of first-degree assault and armed criminal action. Hendrix was sentenced to serve fifteen years for the assault conviction and twenty years for the armed criminal action conviction in the Missouri Department of Corrections, with the prison terms to run concurrently. Hendrix appealed, and his conviction was upheld in *State v. Hendrix*, 277 S.W.3d 739 (Mo. App. W.D.2008).

Thereafter, Hendrix filed a Rule 29.15 motion, and once counsel was appointed, an amended motion was filed. Hendrix claimed, *inter alia*, that his trial counsel was ineffective for failing to investigate, obtain, and present evidence of his degenerative joint disease to support his self-defense theory and for failing to request that the trial court submitted lesser-included offense instructions to the jury. Following an evidentiary hearing, the motion court overruled Hendrix's Rule 29.15 motion.

Hendrix appeals.

## Standard of Review

■ "Appellate review of a motion court's denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether its findings of fact and conclusions of law are clearly erroneous." *Williams v. State*, 205 S.W.3d 300, 304 (Mo.App. W.D.2006); *see also* Rule 29.15(k). Findings of facts and conclusions of law are " 'clearly erroneous only if, after review of the entire record, we are left with a definite and firm impression that a mistake has been made.' " *Williams*, 205 S.W.3d at 305 (quoting *Johnson v. State*, 189 S.W.3d 640, 644 (Mo.App. W.D.2006)).

## Analysis

"In order to prevail on an ineffective assistance of counsel claim, [Hendrix] must show by a preponderance of the evidence that: (1) trial counsel's performance was deficient because [he] failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced [Hendrix]." *Dawson v. State*, 315 S.W.3d 726, 731 (Mo. App. W.D.2010) (citing *Strickland v.*

---

**1.** All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

*Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997)). If Hendrix has not established either the performance prong or the prejudice prong, then we need not consider the other, and his claim of ineffective assistance of counsel must fail. *Id.*

"To satisfy the performance prong, [Hendrix] must 'identify trial counsel's specific acts or omissions that were not in conformance with the range of competent representation, or that were the result of unreasonable professional judgment.' " *Id.* (quoting *Williams*, 205 S.W.3d at 305). Hendrix must overcome the presumption that any challenged action was sound trial strategy; that trial counsel rendered adequate assistance of counsel; and that trial counsel made all significant decisions in the exercise of professional judgment. *Id.* "Trial strategy is judged by the 'reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Id.* (quoting *Williams*, 205 S.W.3d at 305).

"[T]o overcome the prejudice prong, [Hendrix] must show a reasonable probability that, but for trial counsel's alleged deficiencies, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). " 'Simply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead, the appellant must show that, absent the error, there is a reasonable probability that he would have been found not guilty.' " *Id.* (quoting *Williams*, 205 S.W.3d at 305).

### *Failure to Investigate, Obtain, and Present Evidence of Hendrix's Degenerative Joint Disease*

Hendrix's first point relied on argues that the trial court erred in overruling his Rule 29.15 motion because his trial counsel was ineffective for failing to investigate and present evidence of the degenerative joint disease in his knees. Hendrix contends that the evidence of his degenerative joint disease—in the form of medical records—would have established that Hendrix was disabled at the time of the crime. Evidence of his disability, Hendrix claims, would have strengthened his self-defense theory by demonstrating that Hendrix needed to utilize a weapon to overcome the mismatch with Paynter. Hendrix argues that, if his self-defense claim were corroborated with this additional evidence, there is a reasonable probability that the result of his trial would have been different.

Hendrix's trial counsel, Gregory Williams ("Williams"), testified that the defense's trial strategy was to "show reasonable justification for the use of deadly force given the threatening nature of [Paynter] and his threats and acts toward [Hendrix] that led up to the actual shooting." Williams effectuated that strategy by asking Paynter about Hendrix's physical limitations during cross-examination. Paynter admitted that Hendrix wore a knee brace on the day of the shooting. Williams stated during closing argument:

Mr. Hendrix, we know from Mr. Paynter's testimony, has some residual injuries from his time in the service. He has bad knees. He is not a physically strong individual. You saw Mr. Paynter. Tank. He looks like a Tank. He acts like a Tank. He is a very strong individual. Is it unreasonable for Mr. Hendrix, when he sees Mr. Paynter return to make sure, knowing that there's been a hostile confrontation, knowing that he's just called the police out, to arm himself? I don't think so. That's a very reasonable thing for an individual who is not physically strong to do.

. . .

[Y]ou have the issue of self-defense. You've met Tank. You've seen Tank.

You've seen what Tank has done to other people.... Was it reasonable to use force? The threat of deadly force? To shoot at the ground in front of him to prevent harm to himself? I think so.

No evidence beyond Paynter's testimony of Hendrix's disability was offered at trial. At the evidentiary hearing, Williams testified that he did not believe that demonstrating the extent, seriousness, and length of Hendrix's degenerative joint disease would have enhanced the self-defense argument. Williams also testified that he did not believe the condition of Hendrix's knees was relevant to the charge of assault in the first degree since it was accomplished by use of a firearm.

In his Rule 29.15 motion, Hendrix argued that Williams should have obtained Hendrix's medical records and presented them to the jury in support of his self-defense claim. Hendrix entered the medical records into evidence at the Rule 29.15 motion hearing. The medical records indicated that Hendrix had a long medical history involving his knees, which were diagnosed as degenerative, and that Hendrix wore braces on both of his legs as a result.

The motion court concluded that Williams was not ineffective for failing to present evidence of Hendrix's physical condition. The motion court reasoned that the evidence was "irrelevant" but noted that, despite the irrelevancy of Hendrix's physical condition, Williams argued it at length during the trial. The motion court did not explain why it found evidence of Hendrix's physical condition irrelevant, but one of the issues at trial was whether Hendrix was acting in self-defense when he shot Paynter.

■■■ " '[S]elf-defense is a person's right to defend himself or herself against attack.' " *Fisher v. State*, 359 S.W.3d 113, 118 (Mo.App. W.D.2011) (quoting *State v.*

*Edwards*, 60 S.W.3d 602, 612 (Mo.App. W.D.2001)). It is available "when and to the extent [the person] reasonably believes such force to be necessary to defend himself or herself ... from what [the person] reasonably believes to be the use or imminent use of unlawful force by such other person." Section 563.031.1. The reasonableness of the belief is determined from an objective test that "measures conduct based on what a hypothetical ordinary reasonable and prudent person would have believed and how they would have reacted." *Edwards*, 60 S.W.3d at 612.

In *Ransom v. Adams Dairy Co.*, 684 S.W.2d 915, 920 (Mo.App. E.D.1985), the court considered a similar issue: whether, in the context of a self-defense claim raised in response to a wrongful death suit, the defendant's drug use and prior convictions were relevant to the issue of liability. There, the victim was shot to death by the operator of an ice cream store. *Id.* at 916. The victim's widow and children brought a wrongful death suit against the operator of the store and the operator's employer. *Id.* at 916–17. On appeal, the victim's widow and children argued that the operator's drug use and prior convictions were improperly excluded from trial because they were relevant to both the operator's liability and the employer's liability. *Id.* at 920. The court disagreed, explaining:

We will assume that [the operator's] drug use and prior convictions are relevant to show [the operator] is incapable to use a gun reasonably and, therefore, relevant to show [the employer] should not have given a gun to [the operator], as an agent, or, should have not hired [the operator] as an employee with access to a gun, or, should not have entrusted him as a lessee with a gun. This assumed relevance, however, does not make this evidence relevant to the issue

of whether [the operator] acted as a "reasonable person" in shooting [the victim]. This self-defense issue is an objective not a subjective standard. Thus, [the operator's] proclivities or propensities are irrelevant to this issue.

*Id.* at 920–21 (footnote omitted).

 Although *Ransom* was decided in the context of a civil claim of self-defense, its analysis of the "reasonable person" standard is relevant to determining whether Hendrix's medical records were relevant to his claim of self-defense. *See, e.g., Martin v. Yeoham,* 419 S.W.2d 937, 948 (Mo.App.1967) ("[T]he law governing the right of self-defense is much the same in civil actions for assault and battery as in criminal cases . . . ." (internal quotation marks omitted)). Hendrix's medical records, if entered into evidence at trial, would have merely established that he suffered from degenerative joint disease in his knees. As *Ransom* indicated, a defendant's "proclivities or propensities are irrelevant" to the issue of whether the defendant acted as a "reasonable person." 684 S.W.2d at 921. Williams was not ineffective for failing to present irrelevant evidence because it would have been inadmissible at trial. *See Paulson v. State,* 342 S.W.3d 452, 456 (Mo.App. S.D.2011).

 Even if evidence of Hendrix's disabilities would have been relevant and, therefore, admissible, Hendrix offered no evidence at the motion hearing to demonstrate that, had Williams entered Hendrix's medical records detailing his degenerative joint disease, the jury would have acquitted Hendrix. The jury heard Paynter's testimony that Hendrix wore knee braces, and the defense's closing argument utilized Hendrix's knee injuries to argue the relative size difference between Hendrix and Paynter. Despite the jury hearing that evidence and argument, it rejected Hendrix's self-defense theory. Hendrix

has not demonstrated that, had the medical records been admitted, there is a reasonable probability that he would have been found not guilty.

The motion court did not clearly err in denying Hendrix's motion on the basis that he failed to demonstrate that his counsel was ineffective for failing to investigate and present Hendrix's medical records in support of his self-defense claim at trial.

### Failure to Request Lesser–Included Jury Instructions for Assault in the Second Degree and Assault in the Third Degree

 Hendrix's second point on appeal argues that his trial counsel was ineffective for failing to request lesser-included jury instructions for assault in the second degree and assault in the third degree. Hendrix claims that a reasonably competent attorney would have requested the lesser-included jury instructions because there was evidence at trial that tended to establish that Hendrix acted recklessly or negligently during the incident. Because his trial counsel failed to request the lesser-included instructions, Hendrix claims, he was prejudiced in that the jury was not given the opportunity to consider whether Hendrix was guilty of a less serious offense than first-degree assault.

Hendrix was charged with first-degree assault, which is defined as "attempt[ing] to kill or knowingly caus[ing] or attempt[ing] to cause serious physical injury to another person." Section 565.050.1. The jury was instructed to find Hendrix guilty of assault in the first degree if they found that there was evidence beyond a reasonable doubt to establish:

First, that on or about April 15, 2004 in the County of Benton, State of Missouri [Hendrix] attempted to cause serious physical injury to [Paynter] by shooting him, and

Second, that [Hendrix] in the course of such conduct caused serious physical injury to [Paynter], and

Third, that the defendant did not act in lawful self defense. . . .

At the instruction conference, Williams did not ask the trial court to give the lesser-included instructions—those for second-degree assault and third-degree assault. Williams explained that he did not request the lesser-included instructions because the trial strategy was to argue that Hendrix's behavior "was justified by the menacing and threatening behavior" of Paynter.

 To successfully establish ineffective assistance of counsel for failure to request instructions on lesser-included offenses, Hendrix must establish "that the decision not to request the instruction was not reasonable trial strategy." *Oplinger v. State,* 350 S.W.3d 474, 477 (Mo.App. S.D.2011). If trial counsel makes an objectively reasonable choice not to request an instruction, there is no ineffective assistance of counsel. *Id.* " 'It is a tactical decision usually based on the belief—often a reasonable one—that the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense *if the lesser is not submitted.*' " *Id.* (quoting *Neal v. State,* 99 S.W.3d 571, 576 (Mo.App. S.D.2003)).

Williams testified that the defense strategy was to present evidence supporting a finding of self-defense. If the jury would have found that Hendrix's actions were in self-defense, then Hendrix would not have been convicted of *any* offense. Essentially, Williams chose to forgo an instruction on a lesser-included offense in hopes of obtaining an acquittal. Despite the jury ultimately finding Hendrix guilty of assault in the first degree, the decision to pursue an "all-or-nothing defense" was reasonable. It was a reasonable trial strategy to

ask the jury for an outright acquittal over a conviction for a lesser offense.

 Even if we found that the trial strategy were unreasonable, Hendrix failed to demonstrate that he was prejudiced by the failure to request that the jury receive instructions on assault in the second degree and assault in the first degree. The jury, after hearing the evidence, convicted Hendrix of assault in the first degree. To claim he suffered prejudice, Hendrix must necessarily argue that the jury's conviction was erroneous in that it would have convicted him of a lesser offense had it been given the instruction. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on the grounds of evidentiary insufficiency, that the . . . jury acted according to law." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Prejudice is determined with the underlying assumption that the jury "reasonably, conscientiously, and impartially" applied the law. *Id.* Under the *Strickland* decision, we must find that the jury followed the law in reaching its decision to find Hendrix guilty of assault in the first degree. Thus, no prejudice can be established.

The motion court did not clearly err in denying Hendrix's motion on the basis that he failed to demonstrate that his counsel was ineffective for failing to request instructions on the lesser-included offenses of assault in the second degree and assault in the third degree.

### Conclusion

We affirm.

All concur.